## Gibbs *against* Neely.

An agreement between an execution creditor and the debtor, that personal property levied on shall be sold on five days' notice by the sheriff is fraudulent and void as to another creditor having an execution levied subsequently upon the same property; and a sale of the property to the plaintiff himself, under such circumstances, confers upon him no title to it.

The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all; and the acts and declarations of one may be given in evidence to affect the others.

A sale of property to the plaintiff in an execution issued upon a satisfied judgment is void, and confers no title; in an action, therefore, for the property thus sold, it is competent for the party to give in evidence facts, from which the jury may infer that the judgment was satisfied.

ERROR to the common pleas of *Bradford* county.

Replevin by Alexander Neely & Co. against Eli Gibbs for a yoke of oxen, a wagon, sled, logs, lumber, &c.: to which the defendant pleaded property in himself, &c.

The plaintiffs gave in evidence a judgment in their favour against Jesse Carman, entered 22d March 1834, for 200 dollars; also another against the same person for 183 dollars 75 cents, entered 22d April 1834; also writs of *fieri facias* upon each of these judgments, issued on the 15th and 18th December 1834, and which were levied on the 30th of January 1835 upon the property in dispute, and returned on the 31st of January 1835 " not sold for want of time." Writs of *venditioni exponas* issued 2d April 1835, which were returned by the sheriff " that on the 7th of April 1835 he sold the property levied for 257 dollars 61 cents and appropriated the proceeds of the sale to the above executions." The plaintiffs then proved, that they were the purchasers of the property at the sheriff's sale, and that the defendant had agreed that the property should be sold in five days' notice, as it was. The defendant then gave in evidence a judgment in his favour against the same Jesse Carman : on the 25th of December 1834 the summons issued by a justice, and on the 10th of January 1835 judgment was entered by default for 92 dollars 16 cents : another judgment of the same plaintiff against the same defendant for 15 dollars, entered the same day. Executions issued upon each on the 1st of April 1835, upon which the constable levied on the same property of the defendants, and advertised the same for sale on the 7th of April 1835 at one o'clock. The sheriff's sale was at twelve o'clock, and he sold the property to Neely & Co., the plaintiffs, and the constable sold at one o'clock to Gibbs, the defendant. Gibbs got possession of the property, and this suit was brought for it.

[Gibbs v. Neely.]

The defendant alleged that the proceedings of Neely & Co., the plaintiffs, were in pursuance of a collusion between them and Carman to defraud the creditors of the latter; that the judgments were in fact paid before the day of sale of the property; and that the sale was void, because but five days' notice of it was given by the sheriff: and to support these grounds of defence he offered in evidence a deed from Carman to Neely, dated the 2d of April 1835 (the day when the writs of *venditioni exponas* issued), for two hundred and fifty acres of land for the consideration of 100 dollars, with parol evidence that it was executed in the absence of Neely, and that no consideration passed; also a deed dated 11th of April 1836, from Neely to Stephen H. Wakeman for one hundred and fifty acres of the same land for the consideration of 1000 dollars, and evidence that the residue of the land retained by Neely was of the value of 300 dollars.

This evidence was objected to by the plaintiffs, and rejected by the court, who sealed a bill of exceptions.

The defendant then offered to give in evidence the declarations of Carman in the absence of Neely, tending to show that his object was so to fix his business with Neely, that his creditors would be defrauded.

This was also objected to and rejected, and the court sealed a bill of exception.

The court below was of opinion that there was nothing in the evidence which ought legally to bar the plaintiff's recovery.

*Watkins*, for plaintiff in error.
*Dimmock*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—The plaintiffs in replevin claim title to the property by virtue of a purchase at a sheriff's sale on executions issued on two judgments in their name against a certain Jesse Carman. The defendant, who was a subsequent execution creditor, denies the plaintiffs' title on three grounds: 1. That there was fraud and collusion between the plaintiffs and Carman to hinder, delay and defraud creditors; 2. That the judgments were paid; and 3. That the property was sold on five days' notice, without his consent.

To sustain the two first allegations, certain testimony was offered which was rejected by the court. Of this the defendant complains. The first and third bills depend on the same principle. It appears in evidence that the property was suffered to remain in the possession of the debtor until Gibbs issued his execution and was about to sell in satisfaction of his debt. That then Carman applied to Neely's agent to issue a *venditioni*, which was done; and by agreement of the parties, the property was sold by the sheriff on five days' notice, with the evident design to anticipate the sale of the goods on the execution of Gibbs. Before the sale, the goods on which the levy was made were used and disposed of by Carman, with, there is reason

[Gibbs v. Neely.]

to believe, the knowledge and approbation of Neely; and that after the sale he retained the possession at least of some of the property purchased by the plaintiff at the sheriff's sale. With the previous proof before the jury, from which fraud might be inferred, it was competent for the defendant, in further proof of the design to hinder, delay and defraud creditors, to show that the day the *venditioni exponas* was issued the debtor conveyed a tract of land to the creditor, or to his agent, whose acts he afterwards adopted, worth, as the subsequent sale and the parol testimony showed, 1300 dollars, upon the paltry consideration of 100 dollars expressed in the deed, not one dollar of which was paid at the time, or at any time afterwards, so far as we have been informed. The evidence tends to show a general understanding or combination to defraud creditors, and particularly Gibbs, of which this transaction forms a part, and comes within the principle decided in M'Kinley *v.* M'Gregor, 3 *Whart.* 370. It is possible that it may be perfectly fair and honest, but the evidence serves to cast a shade of suspicion on the parties, and at least requires explanation. But it was not only proper for that reason, but as evidence of payment. It is not enough that the judgments were had for money really due; if they were afterwards paid for, as was held in Hoffman *v.* Strohecker, *ante* 86, a sale of property to the plaintiffs in the execution on a satisfied judgment is void. If the real estate was conveyed without any consideration whatever, with a fraudulent purpose, it would be equitable to apply the value of it in discharge of the debt, so as to avoid the sale in the hands of the purchaser. The subsequent sale and parol testimony are evidence of the value of the property conveyed by Carman to the plaintiffs.

We are of opinion there was error in rejecting the evidence contained in the second and fourth bills.

The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all; and the acts and declarations of one may be given in evidence to affect the others. Rogers *v.* Hall, 4 *Watts* 359. A concert of action for a fraudulent purpose was shown, at least some evidence was given which tended to prove it; and this makes Carman's acts and declarations evidence against Neely, so as to make it the duty of the court to refer the whole matter to the jury. Besides, in the fourth bill, the question was put to Carman himself, who was examined as a witness for the plaintiff, as to what he had said in relation to the execution on which the sheriff had levied, and what had become of the clock sold at the sheriff's sale. We cannot anticipate what would have been his reply, but if he had said that he still retained them after the sale, this would have been corroborative evidence of a fraudulent combination between him and the plaintiff.

But the third point is still more material.

The facts are undisputed that the plaintiff and defendant had liens on the property by virtue of their respective executions. The property was sold at five days' notice, with the assent of the debtor, but

[Gibbs v. Neely.]

without the assent of Gibbs, who had the younger lien.  The act directs that before making sale on a *fieri facias,* notice, &c. shall be given by the sheriff during at least six days, by not fewer than six handbills, to be put up at such places as he shall deem best calculated to give information to the public of such sale.  It is very important that notice should not be dispensed with; for if the debtor and one of the creditors can combine together, without the express consent of the other, to sell on five days' notice, there is nothing to prevent them doing the same on five hours' notice, or without any notice whatever; and would manifestly be utter destruction to the rights of other creditors.  The intention is that notice should be given to the public, that the highest price may be got for the property, not only for the benefit of one of the creditors and the debtor, but for the advantage of all who are interested in the proceeds. When all who have an interest in the sale agree to it, their consent will remove every obstacle; but not so where the sale is held in opposition to, and without the assent of all who have liens on the goods thus seized in execution.  Nor will the presence of the creditor at the sale, as was erroneously supposed, vary the principle.  He neither had nor could he have had six days' notice of the sale; and if he had, this would not alter the case, as the notice was intended not for his information, but it was designed that the public should have notice. And in this case, if the requirements of the sale had been complied with, it is impossible to say whether the goods, at a fair sale, would have brought as much as would have paid both executions.  Of this chance he is defrauded by the contrivance of the plaintiff and the debtor, which of itself is evidence of fraud.  The creditor is not bound to purchase; so that his presence at the sale cannot *legalize* that which otherwise is void.  It, perhaps, did not *suit his* convenience, or it was possibly beyond his means, to raise the money which would be required to pay the prior execution.  Here it must be remembered that the plaintiffs are the purchasers, and cannot be considered in the light of *bona fide* purchasers without notice.  As, then, the plaintiff has no title to the property for which the replevin is brought, we are of opinion the judgment should be reversed.

Judgment reversed.