## Pierce *et al. versus* Evans.

1. Pierce issued an execution against Hanley, under which there was a levy. Pierce and Hanley entered into an agreement under seal stating that in consideration of Pierce's judgment Hanley sold and delivered to Pierce all his goods under levy and they were to be sold by Pierce, when Pierce's judgment should be paid from the proceeds of sale, he should retransfer all the goods unsold, and not proceed with his execution until Hanley should fail to satisfy the judgment from the sale; and that goods thereafter put into the storehouse by Hanley should not be subject to the execution. The goods were placed in possession of Pierce. Shortly afterwards he directed the sheriff to proceed. About the same time a petition in bankruptcy was filed against Hanley and an injunction issued to restrain the sheriff. Hanley was afterwards adjudicated a bankrupt. *Held,* that the agreement was an abandonment of the execution and levy.

2. A sheriff's sale must be public and on notice required by law.

3. All arrangements for a private sale under execution tend to fraud and are against public policy.

4. The covenants being mutual and the agreement being under seal there was a sufficient consideration.

5. A retail merchant being insolvent confessed judgment to certain creditors, executions being levied, sold his goods to these creditors, he to receive the surplus after paying the judgments. In an issue between the creditors and the bankrupt's assignee, the court charged "unless the plaintiffs satisfy you that this was in the usual course of (the debtor's) business, the verdict should be for the assignee." *Held,* not to be error.

March 22d 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county :* No. 147, to July Term 1868.

The proceeding in this case was a feigned issue to determine the right to money in court made by the sheriff under the circumstances hereafter stated. The issue was between Pierce & Neyhart and W. A. Green, plaintiffs, and S. H. Evans, assignee in bankruptcy of Timothy Hanley, defendant. The order for the issue was made April 22d 1868.

On the 9th of July 1867, Hanley gave a judgment-note for $900, payable on demand to Pierce & Neyhart for a previous indebt-

[Pierce *v.* Evans.]

edness to Pierce of that amount. On the same day judgment was entered and a *fi. fa.* was issued, and on the 12th a levy was made by the sheriff. On the 24th of July Hanley gave a judgment note of W. A. Green for $500, for a previous indebtedness; judgment was entered on this note August 1st 1867, a *fi. fa.* was issued on the same day and a levy made by the sheriff under this writ August 3d. On the 6th of August the following agreement was entered into :—

"Agreement made, &c., between T. Hanley, of Tideoute, &c., of the first part, and Joshua Pierce and William A. Green, of the second part, witnesseth : That for and in consideration of the sum of $1400 to him in hand paid by the parties of the second part, as covered by two judgments hereinafter described, &c., the said party of the first part has sold, &c., unto the parties of the second part, all the following described property, to wit : The one-seventh undivided equitable interest in the premises known as the " Club House" in Tideoute, Pa. : All the unexpired term of a certain lease or lot of ground, &c. : Also, all and entire that stock of dry goods, fancy goods, hosiery, segars and other merchandise in said store-house. The said parties of the second part, their heirs and assigns, to have and to hold the said lease, buildings and wares for ever. Provided however that at such time as said second parties, or such persons as they shall appoint or authorize, shall have received sufficient moneys from the proceeds of sales of said wares or other properties to have paid, first a certain judgment now in the hands of the sheriff of Warren county in favor of said Joshua Pierce, for $900, with all costs, &c., and other expenses attendant thereon ; then to have paid a certain other judgment in the hands of said sheriff in favor of William A. Green for $400 with costs as above; together with a reasonable salary in wages for a competent man who shall have charge of said wares and property on behalf of said parties of the second part; then said parties of the second part shall and hereby agree to sell, assign and retransfer to said party of the first part, without further consideration, all of such above described properties and wares as shall remain unsold or undisposed of. All receipts from sales of said wares and properties to be strictly applied first to the liquidation of said judgment in favor of said Joshua Pierce, with costs, and thereafter to the liquidation of said judgment in favor of said William A. Green with costs. The said parties of the second part further agree not to proceed in the order of execution and sale of goods by said sheriff until such time as said second party should fail to satisfy the consideration-money above mentioned from the proceeds of the sale of said goods and chattels, and it (is) understood and agreed that the sale of said goods and chattels shall be made by retail unless otherwise mutually agreed upon by the parties hereto. And

[Pierce v. Evans.]

it is agreed that all goods and merchandise hereafter put into said place of business and sold by said first party shall not be applied to the satisfaction of the consideration-money of the said second parties, but shall be at the control and disposal of the said first party so far as said second parties are concerned, it being agreed that the said first party have the privilege of said building for making sale of said goods until such time as it shall be disposed of by said second parties, and also of assisting said second parties in the sale of said goods and chattels herein conveyed, &c.

(Signed)    T. HANLEY,    [L. S.]
    JOSHUA PIERCE,    [L. S.]
    W. A. GREEN,    [L. S.]

After this agreement Pierce and Green took possession of the goods to sell them under the agreement. The testimony in the case is not set out in the paper-books; but it appears by the statements in them that Hanley was at this time insolvent, his indebtedness being about $5000, and his assets about $3000. On the 12th or 13th of August 1867 Pierce directed the sheriff to proceed under the fi. fa., and on the 13th one of Hanley's creditors filed a petition in the District Court of the United States to have him declared a bankrupt on the ground that within six months he had committed an act of bankruptcy by giving the above-mentioned judgment-notes to Pierce & Neyhart and Green, with a view to give them a preference. On the same day the District Court issued an injunction against the sheriff, under which the deputy marshal took possession of Hanley's goods. On the 22d of August Hanley was decreed a bankrupt, he having made no opposition to the decree. About the 12th of September Evans was appointed his assignee, and took such possession of the goods as he could, but did not meddle with them further, the injunction being still in force. The injunction was dismissed about the 1st of November. The sheriff then attempted to sell the goods, but was restrained by an order from the Court of Common Pleas of Warren county.

An arrangement was then made between the sheriff and the assignee in bankruptcy, by which assignee was to sell the goods and apply enough of proceeds of sale to pay balance due on writs in sheriff's hands, but the agreement was not to prejudice the legal rights of either party. The money arising from the sale was received by the sheriff and paid into court; this issue was framed to try the right to it.

The points, which by the order for the issue were to be determined, were:—

1. Whether a levy was actually made by the sheriff before the service of the injunction.

11 P. F. SMITH—27

[Pierce *v.* Evans.]

2. Whether the lien of this levy was released by the agreement of August 6th, and not renewed or attempted to be.

3. Whether these judgments were confessed, and the aforesaid agreement made in fraud of the United States Bankrupt Law.

The following are points of the plaintiffs, with the answers of the court :—

"2. The agreement between Hanley, Joshua Pierce and Green, dated August 6th 1867, if made by request of said Hanley, and for the purpose of realizing more for the property levied on than could be made by a forced sale on executions, does not prejudice the rights of the plaintiffs, there being no other execution-creditors claiming the fund."

Answer : "We think the agreement referred to was an abandonment of the fi. fas. by the plaintiffs, and answer this point in the negative."

"3. There was no consideration to support said agreement, and plaintiffs had a right to disregard the same, and if they did so, and ordered the sheriff to proceed with the sale of the property levied on the executions before any intervening rights of other creditors, then their legal rights are not affected by said agreement."

Answer : "We think there was sufficient consideration for said agreement, and that it was binding on the parties to it. We therefore answer this in the negative."

The following are points of the defendants, with their answers :—

"5. The agreement of the 6th of August 1867, with the subsequent taking possession and disposal of goods under the same by plaintiffs, was void as an assignment as against the assignee, even though the jury believe that the plaintiffs had no reasonable cause to believe that a fraud on the Bankrupt Act was intended."

Answer : "We cannot so charge. There must be a fraud intended to avoid the acts of parties ; whether that has been proven or not is for you."

"6. The agreement of 6th August 1867 was an assignment or conveyance in contemplation of bankruptcy."

"Answer : "This involves a mere fact for you to pass upon."

The court (Vincent, J.), after stating the facts, further charged :

"Being of the opinion that plaintiffs cannot claim it under their respective writs and levies, we must next inquire whether they are entitled to it under the agreement before referred to.

"The order to the sheriff to go on under the writs would seem to indicate an abandonment of the agreement, but we think their rights under that remain, unless it is void under the provisions of the Bankrupt Act of March 2d 1867.

["There can be no legal doubt that Hanley contemplated bankruptcy at the time of the agreement, for the petition against him so alleges, and he did not contest it.] In addition to that

[Pierce v. Evans.]

you have evidence that about that time he contemplated bankruptcy. If this be so, his transfer of his goods was in fraud of the Bankrupt Act, so far as he is concerned.

"The Bankrupt Act provides in the 35th section that if an assignment, such as was made in this case, is not made in the usual and ordinary course of the business of the debtor, it shall be primâ facie evidence of fraud, and this we think applies to the assignee of such goods as well as to the assigning debtor. Was this transfer made in the usual and ordinary course of business of the debtor? We think it would be difficult to answer in the affirmative, for it was under an extraordinary pressure. [He transferred all his goods, and thus broke up his business for the time being, and the whole transaction is some evidence of an intention to prefer these creditors, which they must rebut to your satisfaction.] Hanley was in debt about $5000, and had about $3000 worth of property with which to pay, so far as we learn from the evidence. [Unless the plaintiffs satisfy you that this transaction was in the usual course of Hanley's business your verdict should be for the defendant; or if you believe from the evidence that the plaintiffs had reasonable cause to believe that the transfer to them was done with intent to evade, &c., the provisions of the Bankrupt Law, your verdict should be for the defendant.]

"If you believe from the evidence that plaintiffs had no such reasonable cause for believing a fraudulent intent, or if you are satisfied that the transfer was in the usual and ordinary course of Hanley's business, your verdict should be for the plaintiffs."

The verdict was for the defendant.

The plaintiffs removed the case to the Supreme Court, and assigned for error the answers to their points, and the parts of the charge included in brackets.

*L. D. Wetmore* (with whom was *C. W. Stone*), for plaintiffs in error.—The agreement recognised the continuance of the executions. By the agreement there was no benefit to plaintiffs or loss to Hanley. No other execution had come to the sheriff's hands: Deacon *v.* Govett, 4 Philad. R. 7; Freeburger's Appeal, 4 Wright 247. There was doubt that Hanley contemplated bankruptcy, and the question should have been submitted to the jury. Several requisites are necessary to make a conveyance void under the bankrupt law: James on Bankruptcy 157; Act of Congress of 1867, § 35; Wilkinson's Appeal, 4 Barr 287. The bankruptcy was produced by the pressure of the plaintiffs: Haldeman *v.* Michael, 6 W. & S. 128; Richards *v.* Nixon, 8 Harris 24; Hilliard on Bankruptcy 342; James on Bankruptcy 161, 165.

*O. O. Trantum,* for defendant in error.—An execution is not

[*Pierce v. Evans.*]

for security, but to enforce payment: Truitt *v.* Ludwig, 1 Casey 149. The right of the assignee relates to the commencement of the proceedings in bankruptcy: Bankrupt Act of 1867, § 14; Ex parte Foster, 2 Story 131. The seal to the agreement imports a consideration: Yard *v.* Patton, 1 Harris 285. As to Hanley's contemplating bankruptcy—a party is presumed to contemplate the natural result of his acts: Everett *v.* Stone, 3 Story 451; Hilliard on Bankruptcy 336, 344; Ex parte Bailey, 19 Eng. L. & Eq. 51.

The opinion of the court was delivered, May 11th 1869, by

AGNEW, J.—It seems to us there was no substantial error in the charge of the court in this case. The agreement of the 6th of August 1867 between Hanley and Pierce and Green certainly operated as an abandonment of the executions of Pierce & Neyhart and of Green. They were inconsistent and could not stand together. The goods were to be sold by the plaintiffs and not by the sheriff—it was to be by private and not public sale, and without the notice that the law requires. If anything is settled it is that sheriff's sales must be public and not private, and on the notice required by law: Gibbs *v.* Neeley, 7 Watts 305; Bingham *v.* Young, 10 Barr 396; Keyser's Appeal, 1 Harris 411; Ricketts *v.* Unangst, 3 Id. 90; McMichael *v.* McDermott, 5 Id. 353. The tendency of all arrangements for a private sale under execution is to fraud, and hence it is against public policy. The proceeds of the sales were to be paid to the plaintiffs and not to the sheriff, as argued for the plaintiffs in error. The residue of the goods not needed for satisfaction of the claims was to be returned to Hanley, and indeed the whole scheme of the agreement was aside from the proceeding upon the writs. The writs were referred to in the agreement only for the purpose of description, to identify the claims of the plaintiffs. The objection that there was no consideration for the agreement is untenable. The covenants were mutual and the writing was under seal. The fact that the property was levied in execution does not alter the case. The plaintiffs chose to take a present private transfer and possession; in lieu of a future official sale at public auction, for reasons they deemed most beneficial to themselves.

Upon a careful examination of the whole charge we do not think that the portion set forth in the 3d assignment of error was a binding legal instruction to the jury that Hanley contemplated bankruptcy at the time of the agreement. It was certainly a pretty strong assertion of the opinion of the judge on the question of fact, but what follows it immediately, as well as the answer to the defendant's 6th point, and other portions of the charge show that the court left the question as to the agreement being made in contemplation of bankruptcy by Hanley, as a fact to be found by the jury. The plaintiffs in error have not furnished us with the

[Pierce *v.* Evans.]

testimony bearing on this question, but as we find the facts stated by the judge in his charge, and by the defendant in error, it would seem beyond question that Hanley was largely insolvent before he gave the judgments to the plaintiffs. The allegation of the fact of bankruptcy, and that the judgments were given and the agreement entered into in order to prefer the plaintiffs set forth in the creditors' petition; Hanley's default and the decree against him thereupon by the bankrupt court, were certainly sufficient to justify a very strong assertion of opinion on part of the judge unless it were meant to be binding on the jury. But we think the whole charge could not be misunderstood by the jury, and this fact was therefore submitted to them.

Nor do we discover any error in the portions assigned for error in the 4th and 5th assignments. Clearly the transfer of all of Hanley's goods and the lease of the storehouse in which they were kept, and putting others into possession with authority to sell all his stock, and apply the proceeds to the payment of debts in execution, was not in the usual course of business; did break up his business; and was not only some, but very strong evidence of an intent to prefer these creditors, Hanley being at the time clearly insolvent. What is the usual course of a retail merchant's business? It is to sell his goods at his usual place of business to customers as they come, to keep up an ordinary stock and continue in business in the usual way that such merchants do. Certainly it is not in the usual course of a retail merchant's business when in a state of actual insolvency to confess judgment to certain creditors, suffer executions to be levied by them, and then to assign over to them all his stock and his place of business, put them in possession, and provide that the surplus over payment of their claims shall be returned to himself. Such a state of facts undoubtedly did justify the court in saying that it was required to be rebutted by some evidence that the transaction was not intended as an undue preference contrary to the provisions of the Bankrupt Law.

Finding no error, the judgment is affirmed.