## Confer *et al. versus* McNeal.

1. Jacob, by articles sold land to Samuel, his brother; after the death of both the land was sold by the administrator of Jacob for the payment of his debts; in ejectment for the land there was evidence by the purchaser that the sale to Samuel was fraudulent as against Jacob's creditors. *Held*, that a paper in Jacob's handwriting, made after Samuel's death, without date or signature, found amongst Jacob's papers after his death, showing it was not an actual sale to Samuel, although there was no evidence of Samuel's knowledge of the paper or its contents, was evidence on the question of fraud.

2. The least concert or collusion between parties to an illegal transaction makes the act of one that of all.

May 21st 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Blair county*: No. 55, to May Term 1873.

This was an action of ejectment, brought September 3d 1867, in the court below, by Matilda A. Confer, widow, and Louisa J. Confer and others, children and heirs of Samuel Confer, deceased, against Hugh McNeal, for the undivided half of a tract of 200 acres of land.

The case was tried January 30th 1872, before Dean, P. J.

The title to the whole tract had been in Jacob Confer, and previously to the 31st of August 1853, he had sold an undivided half to Jacob Fickes. On that day, by articles of agreement, he contracted to sell the other half to Samuel Confer, who was his brother, for $300, a deed to be made in one year, when the purchase-money was to be paid; a book account of Samuel against Jacob by the terms of the agreement was to be deducted from the purchase-money. The deed was not made in accordance with the covenants of the agreement. Samuel died in September 1858, intestate, leaving a widow and children, the plaintiffs. In 1862, Jacob died intestate, leaving a widow and children.

In July 1865, the administratrix of Samuel applied to the Orphans' Court for a decree for the specific performance of the contract between Jacob and Samuel for the sale of the land in dispute.

The court made the decree as prayed for, and on the 10th of May 1866, in pursuance of the decree, Henry Wertz, adminis-

[Confer v. McNeal.]

trator, &c., of Jacob Confer, deceased, made a deed for the premises to Matilda A. Confer, plaintiff, in trust for the widow and heirs of Samuel Confer, deceased.

The widow and children of Jacob Confer, after his death, conveyed their interest in the premises to David R. Lingafelter. Subsequently Henry Wertz, administrator, &c., of Jacob Confer, deceased, obtained an order for the sale of the premises for the payment of debts. In pursuance of the order they were sold to David R. Lingafelter, and a deed made to him by the administrator September 26th 1864. Lingafelter, on the 20th of February 1865, conveyed to Hugh McNeal, the defendant.

The defendant gave evidence to show that in May 1853, Jacob Confer was insolvent; that in 1855 Jacob's personal property was sold by the sheriff, "almost everything," bought by Samuel and permitted by him to remain in Jacob's possession. The widow of Jacob testified that the sale was "a sham." Also, evidence that Jacob said he had "fixed" his creditors by assigning his land to Samuel; that he had put his property into Samuel's hands to get rid of some debts; that the administrator never claimed the purchase-money under the agreement from Samuel; that Jacob retained possession of the land, and claimed it as long as he lived, rented it, sold wood off it, &c.; that Samuel never exercised any acts of ownership over it. There was other evidence to show that the sale of the land by Jacob to Samuel was colorable and for the purpose of defrauding Jacob's creditors.

The plaintiffs then gave evidence in rebuttal, for the purpose of disproving any fraud in the sale.

The defendant offered in evidence a paper, proved to be in the handwriting of Jacob, and found amongst his papers after his death. The paper was without date or signature. The object of the offer was to show that the agreement for the sale of the land was fraudulent as to creditors, &c.

It was objected to by the plaintiffs, because it was without date and Samuel was not a party to it, &c.

The evidence was admitted by the court and a bill of exceptions sealed.

The paper is as follows:—

" A separate bargain Samuel Confer and me had at the time I sold my interest of the land in dispute with Doctor P. Shoenberger to Samuel;—it was this, that Samuel and Fickes were to carry on the lawsuit the same as Fickes and me had it, that is, each one were to pay half the expenses of the suit, and Samuel was to keep a true account of all it cost him for witness fees and his lost time and trouble, and all expenses that originated at the suit, and after the suit was settled the land was to be sold to the highest price could be got for it. Samuel was to have his pay, and if any balance, it was to come to me or my heirs or assigns;

24 P. F. Smith—8

for this we were to make separate articles for each one to hold a copy so neither of us could be cheated; but this was not done by him, dropping off so soon, the balance of book account I was due him at the time I sold to him was to come out of the three hundred dollars he was to pay me according to the article in the hands of Hoffius.

"N. B. And these separate articles were to be made before I made the deed of conveyance to Samuel Confer."

The verdict was for the defendant.

The plaintiffs took out a writ of error, and assigned for error the admission of the evidence objected to.

*A. S. Landis* (with whom was *T. Banks*), for plaintiffs in error. —Samuel was not in any way connected with the paper and could not be affected by declarations made by his vendor in his absence : Scott *v.* Heilager, 2 Harris 238. It was a declaration of a vendor after sale : Packer *v.* Gonsalus, 1 S. & R. 526; McCulloch *v.* Cowher, 5 W. & S. 431; Gregory *v.* Griffin, 1 Barr 208; Hoffman *v.* Lee, 3 Watts 352; Lloyd *v.* Lynch, 4 Casey 424; 1 Greenl. on Evid., § 180.

*S. S. Blair*, for defendant in error.—The slightest evidence of a fraudulent combination opens the door to the declarations of the grantor: Rogers *v.* Hall, 4 Watts 359 ; Bredin *v.* Bredin, 3 Barr 81 ; Gibbs *v.* Neely, 7 Watts 306 ; Deakers *v.* Barker, 5 Wright 234.

The opinion of the court was delivered, July 2d 1873, by

AGNEW, J.—The plaintiff in this ejectment claimed the land in controversy under an article of bargain and sale, dated in 1853. A defence set up to the bargain was, that it was a fraudulent agreement between the two brothers, Jacob and Samuel Confer, to protect Jacob's property against his creditors ; and McNeal, the defendant, having purchased at a sale for the payment of Jacob's debts, was in a position to contest the sale to Samuel. Samuel Confer never took possession under his contract, but suffered Jacob to remain on the land, taking all the profits and selling timber to a very large amount. Shortly after this bargain, Jacob confessed a judgment to Samuel, under which Jacob's personal estate was sold and bought in by Samuel, but suffered by him to remain with Jacob, no money passing from Samuel to the sheriff upon the sale. It was in proof also, that Jacob was largely in debt, and died insolvent. Besides these facts there was evidence that the sale to Samuel was merely colorable. Jacob's wife testified it was a sham, and his administrator testified that he never set up a claim to the purchase-money under the contract between Jacob and Samuel. Altogether the evidence of collusion between the two brothers was

[Confer v. McNeal.]

ample. It was stronger than the evidence of collusion in the cases of Bredin v. Bredin, 3 Barr 81; Gibbs v. Neely, 7 Watts 305; Rogers v. Hall, 4 Watts 361; or Deakers v. Temple & Barker, 5 Wright 234. After this evidence had been given the defendant offered a paper in the handwriting of Jacob Confer, found among his papers after his death, but not signed, containing a memorandum of the understanding between Samuel and himself, in relation to the bargain for the land. The purpose of the offer was to show that the bargain was fraudulent as to Jacob's creditors. It was objected to because the memorandum was without date; Samuel was no party to it, and could not be affected by Jacob's subsequent declarations. Had there been no precedent evidence of collusion between Jacob and Samuel, these objections would have been fatal, and the authorities cited by the plaintiff in error would have been in point. The absence of evidence of collusion, fraud or concert, is the very ground on which Judge Coulter puts the decision in Scott v. Heilager, 2 Harris 238. And in all the cases cited the ground of decision is, that an absent vendee is not to be affected by the declarations of his vendor, when not a party to a fraud. On the other hand, as said by C. J. Gibson, in Rogers v. Hall, 4 Watts 361, the least degree of concert or collusion between parties to an illegal transaction, makes the act of one the act of all. This is repeated by Judge Rogers, in Gibbs v. Neely, 7 Watts 307. And so in MacKinley v. McGregor, 3 Wharton 397. The strongest case of all on this point is Bredin v. Bredin, supra. There was no evidence of any acts or declarations on the part of John Bredin before he accepted his brother James's bond, to connect him with the fraud on James's creditors. Consanguinity and certain coincidences in his subsequent acts were the only evidence; yet there, Gibson, C. J., said, that after much reflection he had changed his first opinion, and he supported the evidence of James's declarations, which went to impeach the bond in the hands of John. In Deakers v. Temple & Barker, supra, it was said by Justice Woodward, that all experience proves, and rules of evidence are founded in human experience, that, if fraud is to be detected, under the various cloaks it puts on, the conduct of the parties before and after the fact complained of, as well as in immediate connection with it, must be freely examined. Justice Rogers says, in MacKinley v. McGregor, supra: "For this purpose (fraud) all the transactions of Mrs. MacKinley, and her declarations, in connection with the business in which she was engaged as the agent of her husband, were properly admitted in evidence. It is true, that a disposition to cheat one person cannot be called in to aid evidence of fraud in a subsequent or prior and distinct transaction. But when it is one of a series of acts, although with distinct and different persons, it may be received to prove a general combination, or preconcerted plan to cheat and defraud, of which

[Confer *v.* McNeal.]

the one in controversy may be the result." In this case the memorandum was both an act and a declaration of Jacob, corroborative of the prior scheme of fraud to baulk his creditors. It was a continuation on his part of the collusive combination, and tended to strengthen the proof. But it is said it ought not to have been received in evidence, because Samuel was dead when Jacob made the memorandum. But Samuel's death did not put an end to the scheme of fraud already participated in by him, or destroy the propulsive force he set in motion by his concerted act. How then could his death put out of sight an act of the survivor in pursuance of and in perpetuation of the fraud both had put into motion. True, Jacob's act after his death would not be primary evidence against Samuel, to establish the joint concert; but as an effect of the producing cause (the collusion already proved), and as one of a series of acts in the same direction, it corroborated the evidence of what had gone before, and therefore had some weight in the chain of proof, and this it was for the jury, and not the court, to determine. It may be slight, yet there was no error in receiving it.                                    Judgment affirmed.

WILLIAMS and MERCUR, JJ., dissented.