## Deakers *versus* Temple & Barker and Reed & Brothers.

*Declarations of Party to alleged Fraud, when Evidence.—Fraud, actual and constructive.—Fraudulent Intent, proof of.— Who are Bonâ Fide Purchasers, as against Execution-Creditors.—Specific Points need not be answered, where covered by the general Charge.*

C. and wife being in possession of a store, carried on in her name, made an alleged fraudulent transfer of it to D. in consideration of his several promissory time notes, a few hours before the execution of one of their creditors came to the sheriff's hands. After a levy upon the goods, on the trial of a feigned issue between D. as plaintiff, and the execution-creditor as defendant, contesting the validity of the transfer; the deputy sheriff was permitted to testify as to the declarations of C., whom, with his wife, he found in the store when he came to levy; on writ of error it was *held:*

1. That the admission of C.'s declarations was not error, for he had joined his wife in making the sale, and was one of the vendors still in possession under whom D. claimed, and inasmuch as the circumstances afforded some evidence of concert and collusion between D. and C. and wife, to defraud the creditors of the latter, the declarations of one were evidence against the other.

2. Evidence was admissible on the trial of the issue, that C. and wife on the day the first execution was issued, and during the three days previous, had sold and assigned a mortgage belonging to her, conveyed away a lot of ground, and mortgaged other real estate for a large amount, the proceeds of which mortgage when sold were paid to her, for the purpose of showing a fraudulent intent, though it was not directly relevant.

3. It was not error in the court below to charge the jury, "that if they believed from the evidence, that the sale was made by C. or by his wife with his assent, for the purpose of hindering, delaying, or defrauding his creditors, and that the plaintiff paid no money but gave his notes, none of which were negotiated, then D. was not such a purchaser under all the circumstances as the law would protect against C.'s execution-creditors."

4. Where the judge in his general charge answers substantially the points presented to him on the trial, it is not error to omit specific answers to each point in detail; and where, under the circumstances, the plaintiff could not have been benefited by a more specific response to his points, a failure to make it, is no ground for reversal.

ERROR to the District Court of *Allegheny county.*

This was a proceeding under the Sheriff's Interpleader Act, in which issue was joined between Richard Deakers, as plaintiff, and Reed Brothers & Co., for the use of John Farnum, James

[Deakers *v.* Temple & Barker *et al.*]

Martin, and John S. Errington, trustees; and Temple and Barker as defendants, to determine the title to certain goods levied on by the sheriff, as the property of Martin Connolly.

The case was this:—Martin Connolly and his wife carried on a dry goods store on Wylie street, in Pittsburgh, for several years prior to the 23d of August 1860. On that day the plaintiff alleged that he purchased from her her entire stock of goods for the sum of $1800, for which he gave three negotiable notes for $600 each—the first at six months without interest, the second at nine or twelve months, and the third at eighteen months with interest; and that he went into possession on the *forenoon* of that day, and continued in the possession ever since.

On the trial the plaintiff gave in evidence the following paper:

" Mr. Richard Deakers:

" Bought of Mary Connolly the entire stock of dry goods and merchandise generally, contained in the house number 79 Wylie street, Pittsburgh, together with the good-will of the stand, and all the store-fixtures contained therein, for the sum of $1800. Pittsburgh, August 23d 1860.

" Received payment,　　　　　　　　　　MARY CONNELLY.

" I hereby fully approve of and agree to the above.

　　　　　　　　　　　　　　　　　　　MARTIN CONNOLLY.

" Witness present: JOHN KELLY."

He also gave evidence tending to prove that said paper was executed and delivered, and the possession of the goods and store delivered to him before one o'clock P. M., of August 23d 1860; and also that he executed and delivered to Mary Connolly, the vendor, his three negotiable promissory notes—at six, twelve, and eighteen months respectively, for $600 each —the last two bearing interest. Plaintiff also gave in evidence an inventory and appraisement of the goods, made by respectable and disinterested merchants of the city of Pittsburgh, showing that the consideration ($1800) paid by Deakers to Mary Connolly was a fair and just price for the store. He also proved by several witnesses that, from the time of the sale till the present time, he had absolute and exclusive possession of the store in controversy.

The defendants showed a large number of judgments against Connolly, and that they had issued executions on those in their favour, which were received by the sheriff as follows:—

One in favour of Temple & Barker, on the 23d of August 1860, at half-past two o'clock P. M. The other in favour of Reed Brothers & Co., August 25th 1860, at half-past two o'clock P. M. By virtue of which the sheriff, on the 27th of August 1860, levied on the entire stock of goods in the store, which are

[Deakers *v.* Temple & Barker *et al.*]

now in dispute. These two executions, being the one for $1098.63, and the other for $888.15, with interest, it was conceded, would be sufficient in amount to absorb the entire stock of goods in controversy.

The defendants also called Samuel B. Cluley, deputy sheriff, who testified that he called at the store on August 27th 1860, and made the levy; that Martin Connolly, his wife and daughter and others, were in the store—Mr. Deakers was not present; that he, Cluley, told Connolly he had the executions against him, and had been directed to levy on the store; and then proposed to prove what Martin Connolly said to the witness in reply.

Plaintiff's counsel objected to the evidence as incompetent and irrelevant, but the court overruled the objections and admitted the evidence.

The defendants then offered to prove that Martin Connolly and wife, for the purpose of hindering and delaying creditors in the collection of their debts, did, between the 20th of August 1860 and September 1st 1860, sell and dispose of a bond amounting to $900, to A. McTighe; and on the 21st of August 1860, conveyed to John Mellon, Esq., a lot of ground, situate on Second street, for the consideration of $1500; and on the 23d of May 1860, mortgaged for $3000 certain real estate in the city of Pittsburgh, belonging to Connolly, which was, on the 27th of August 1860, sold to Hon. Thomas Irwin, and the proceeds paid over to Mrs. Connolly; to be followed by proof that the sale of the stock of goods in the store was done for the purpose of hindering and delaying the defendants from making their claims off of said goods; and that R. Deakers knew, at the time of the sale, that such was the intent of M. Connolly and wife.

The plaintiff objected that the offer is irrelevant so far as it relates to all matters except the property in controversy in this suit, but the objection was overruled and evidence admitted.

A number of deeds and mortgages were given in evidence, showing that Connolly and his wife conveyed away and encumbered their real estate, to a large amount, about the time of this alleged transfer of the store to Deakers; as also a number of judgments in favour of other creditors, beside those who are parties here, amounting, without interest, to over $3000.

The plaintiff's counsel requested the court to charge the jury,—

1. That if Richard Deakers, the plaintiff, purchased the dry goods store in controversy from *Mary Connolly*, with the knowledge and approval of Martin Connolly, her husband, in good faith and for a valuable consideration, on the 23d day of August 1860, prior to the lien of defendants' executions, and there was a corresponding possession in the vendee, then a good title passed, and the verdict of the jury must be for the plaintiff.

[Deakers *v.* Temple & Barker *et al.*

2. If the store was sold by Mary Connolly to plaintiff, with the knowledge and approval of her husband, Martin Connolly, as stated in the bill of sale dated August 23d 1860, and given in evidence by plaintiff, it is immaterial in this issue, whether the store belonged to said Mary Connolly or her husband.

3. If the jury believe that Richard Deakers purchased the goods or store in controversy, on August 23d 1860, for a good and valuable consideration, before the writs of execution went into the sheriff's hands, then the motives or reasons which induced Mr. or Mrs. Connolly to sell the same cannot prejudice plaintiff's title.

4. If the jury believe that the plaintiff honestly and in good faith purchased the store from Mrs. Connolly, with the knowledge and consent of Martin Connolly, her husband, for a just consideration, to wit, three negotiable promissory notes, of $600 each, and that said purchase was made and possession thereof acquired by plaintiff prior to the lien of defendants' executions, or either of them, then the verdict must be in favour of the plaintiff.

5. That if the stock of goods in controversy was sold in gross by Mrs. Connolly, with the assent of her husband, Martin Connolly, to R. Deakers, the plaintiff, on the 24d day of August 1860; that the possession of the entire store was given up to Deakers on that day, prior to the time the writs of the defendants, or either of them, went into the hands of the sheriff, and the possession continued in Deakers, the sale was complete, and the subsequent invoicing of the goods cannot affect the question of the sale or delivery.

6. That fraud is never presumed, but must always be proved; and where fraud is attempted to be proved by circumstances, in order to establish its existence, there must be such a combination of circumstances as will, when taken together, be equivalent to direct and positive testimony.

7. That even if the intention of Martin Connolly and Mary Connolly, at the time of making the sale, was fraudulent as to their creditors, yet, if the present plaintiff purchased the stock of goods *bonâ fide* for a valuable consideration, and had taken possession of the goods before the writs of defendants went into the hands of the sheriff, and continued in the possession, he cannot be affected by the fraud of the Connollys, unless he participated in or had notice of that fraud.

8. That there is no evidence in this cause, showing, or tending to show, or from which the jury can infer that the present plaintiff either participated in, or had any knowledge of any fraudulent intent on the part of the Connollys respecting the sale of the goods.

The court below (HAMPTON, J.), after stating the material facts of the case, charged as follows:—

238                    SUPREME COURT              [*Pittsburgh*

"*Martin Connolly owned and carried on a dry goods store on Wylie street, in Pittsburgh, for several years prior to the 23d of August* 1860. *On that day, the plaintiff alleges he purchased from him his entire stock of goods for the sum of* $1800.

"The case turns upon the validity of the sale to Deakers. The plaintiff alleges that it was a fair *bonâ fide* purchase on his part, accompanied and followed by such possession as the law requires. This allegation is denied by the defendants. We must, therefore, consider what the law requires to constitute a good and valid sale of personal property, by one deeply indebted, in order to vest a good title in the vendee, as against the execution-creditors of the vendor.

" The great and leading principle required by the law, to give validity to any transaction, is that it shall not be tainted with either actual or constructive fraud; actual fraud consists in any trick, artifice, or design whatever, by means of which one or more persons induce another to do an act to his own injury, or by which he is cheated, deceived, or wronged. Or it may be said to be the intentional and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another. And whenever any transaction is tainted by these elements, the law declares it utterly null and void, as to the party defrauded.

" By constructive fraud, is meant such a contract or act, which, though not originating in any actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, yet, by its tendency to deceive or mislead them, or to violate public or private confidence, or to impair or injure the public interests, is deemed equally reprehensible with positive fraud, and, therefore, is prohibited by law, as within the same reason and mischief as contracts and acts done *mala animo.* Constructive frauds are such as are either against public policy, in violation of some special confidence or trust, or operate substantially as a fraud upon private rights, interests, duties, or intentions of third persons, or unconscientiously compromit, or injuriously affect, the private interests, rights, or duties of the parties themselves : 1 Story's Eq., chap. 7, §§ 258-440.

" Under the head of constructive fraud are embraced all conveyances or transfers of property, real or personal, made for the purpose of hindering, delaying, or defrauding creditors, when the debtor is deeply indebted or embarrassed at the time, except where the purchaser is ignorant of any such intent, purchases in good faith, and pays a full and fair price for the property so transferred. Cases have repeatedly been decided, in which persons have given a full and fair price for goods, and where the possession has been actually changed ; yet, being done for the purpose of defrauding creditors, the transaction has been held

[Deakers *v.* Temple & Barker *et al.*]

fraudulent, and therefore set aside : Campb. 434 ; 12 Mass. 245 ; Id. 456.   Thus, when a person with knowledge of a decree against a defendant, bought the house and goods belonging to him, and gave a full price for them, the court said that the purchase, being with a manifest view to defeat the creditor, was fraudulent ; and, notwithstanding the valuable consideration, void : 1 Burrow 474–5.   So, if a man should know of a judgment and execution, and, with a view to defeat it, should purchase the debtor's goods, it would be void, because the purpose is iniquitous.   The same doctrine has been laid down by the Supreme Court of this state, in a long train of decisions, where it is held that the sale, in order to vest the title, must be not only in good faith, but also for a valuable consideration paid by the purchaser. For, although, as it was ruled in Clemins *v.* Davis, 7 Barr 263, the purchaser actually *paid* a full price ; yet, if it was made, with the knowledge of the vendee, for the purpose of preventing a levy by the sheriff, it would be void.   *But, it is contended that if a sale be made for a full price, and the purchaser gave his negotiable notes therefor, without any knowledge that the vendor intended to hinder or delay his creditors, the sale is to be held valid. The learned counsel have failed to produce any authority for this position, nor do I think it possible for them to find such a case.* I do not decide that when a purchase is made in good faith, and negotiable notes given, and they are negotiated in the regular course of business, before any levy made on the property so purchased—all other circumstances being right—that such sale would be void.   In Cadbury *v.* Nolen, 5 Barr 320, it was held that when A. made a sale of chattels, and transferred the securities to B., his judgment-creditor, B. may avoid the sale by an execution, if it was fraudulent as to creditors.

" Another indispensable rule, in order to vest a good title in the purchaser of personal property, is that the possession must accompany and follow the purchase ; and the change of possession must, if practicable, be actual, absolute, and entire, and it must become in the purchaser visible, notorious, exclusive, and continued.   It is not sufficient that the vendee go into possession with the vendor—this is called a mixed possession, which will vitiate the sale.   The delivery of the entire and exclusive possession must be as complete and perfect as the circumstances will permit.

" An execution issued and placed in the sheriff's hands binds all the personal property of the defendant within the county, from the time it is received by him ; consequently, a purchaser from the defendant takes the property subject to the lien of the execution in the sheriff's hands, who may seize and sell the same wherever it may be found within his bailiwick.   Let us apply these principles to the case before us.

[Deakers *v.* Temple & Barker *et al.*]

" 1. Was there actual fraud? Did the parties agree to make a sham sale, for the purpose of hindering, delaying, cheating, or defrauding the creditors of Connolly? If so, it would be such a trick or contrivance to cover up the property of the debtor, in order to shield it from seizure and sale by the sheriff, as would vitiate the whole transaction, and the plaintiff cannot recover.

" 2. If you should be of opinion that this sale was not tainted with actual fraud, is it liable to impeachment on the ground of constructive fraud? Under this branch of the case, the following questions arise, viz. :—

" (1.) Was the sale, although absolute between the parties, intended by Connolly to hinder, delay, or defraud his creditors, and was that design known or assented to by Deakers? If so, the sale was void as to those creditors whose interests were intended to be defrauded, and the plaintiff cannot recover.

· " (2.) Were the sale and delivery of the store completed before the executions were received by the sheriff? If not, the sale was void as to the execution-creditors, and your verdict should be for the defendants.

" 3. *But if you should find in favour of the plaintiff on all the foregoing questions, it remains to be considered, in the last place, whether the plaintiff, if Connolly intended to hinder or delay his creditors, was such a purchaser as the law will protect; although ignorant of any such design; or, in other words, whether he was an innocent purchaser, without notice of the fraud.* It is conceded that Deakers paid no money on the purchase, but gave his negotiable notes, at six, twelve, and eighteen months, for $600 each, the first being without interest. It is shown by the evidence that the notes were handed over by Connolly to his wife, as soon as they were given, and *it is not alleged or pretended that they have ever been negotiated. Deakers, therefore, has no equity to be protected*— he stands on his naked legal title, springing from the lean purchase, without having paid a farthing, and without the slightest risk of sustaining any loss, except the chances of a speculation which, if his purchase was, as he alleges, for a full and fair price, could not be very flattering. The moment the levy was made by the sheriff, the plaintiff might have filed a bill in equity, to restrain Connolly and his wife from negotiating the notes, and if suit was brought on them, no recovery would have been allowed until the controversy about the title to the goods purchased were determined. As *the failure of title in the vendor would have constituted a good defence to the notes, Deakers was perfectly safe. An innocent purchaser, without notice, is one who, in good faith, buys and pays his money, without any notice of trust, fraud, or defect of title. Such a one will be protected.* But one who has paid nothing, nor sustained any loss or injury, nor is in any danger of sustaining any, has nothing to be·protected.

[Deakers *v.* Temple & Barker *et al.*]

"*If, then, you believe, from the evidence, that this sale was made by Connolly, or by his wife, with his assent, for the purpose of hindering, delaying, or defrauding his creditors, and that the plaintiff paid no money, but gave his notes at six, twelve, and eighteen months, for $600 each, the first being without interest, and that none of the notes were negotiated, Deakers was not such an innocent purchaser, under all the circumstances, as the law will protect, as against the execution-creditors of Connolly.*"

The points presented by the plaintiff were all refused, except so far as they were answered and affirmed in the general charge.

Under these instructions there was a verdict and judgment for the defendant. Whereupon the plaintiff sued out this writ, and assigned for error :—

1. The admission in evidence of the declarations of Martin Connolly in the absence of the plaintiff.

2. The admission in evidence of the sale of the bond for $900 to A. McTighe, of the lot to John Mellor, the mortgage for $3000, and the other matters contained in the second bill of exceptions.

3. In refusing to answer the points presented by the plaintiff.

4. In refusing to instruct the jury as requested in the 4th, 6th, 7th, and 8th points of plaintiff.

5 to 12. In charging the jury as above printed in *italic.*

*Marshall & Brown,* with whom was *B. F. Lucas,* for plaintiff in error.

*A. H. Miller* and *David Reed,* for defendants.

The opinion of the court was delivered, January 6th 1862, by

WOODWARD, J.—We do not deem it necessary to go through the twelve errors assigned, and discuss them in detail. The case involved a question of fraudulent transfer of a store of goods. Connolly and wife, who had been in possession of a store, which was carried on in the wife's name, completed a sale of the goods to Deakers for his promissory notes a few hours before the execution of Temple and Barker came into the sheriff's hands. When the deputy sheriff called to make a levy, he found Connolly and wife both in the store, and with Connolly he had some conversation which he was permitted to prove on the trial. The admission of Connolly's declarations is the first error assigned.

They were evidence, first, because he had joined his wife in making the sale, and was thus one of the vendors still in possession, under whom Deakers claimed ; and next, because the circumstances afforded some evidence of concert and collusion, between Deakers and Connolly and wife, to defraud the creditors

5 WR.—16

[Deakers *v.* Temple & Barker *et al.*]

of the latter, and therefore, the declarations of one were evidence against the other.

The evidence complained of in the second error, though not directly relevant to the immediate issue, was such as is usually admitted in cases of fraud, and was very proper as exhibiting the conduct of Connolly and wife on the eve of bankruptcy. It is a bad sign for parties who have been convicted of a fraud to complain of an excess of evidence. Their effort to draw the narrowest possible sight upon the pending issue, and to exclude everything which, according to the most rigid rules of evidence, is not relevant to it, indicates a consciousness that the transactions which surround the main fact will not bear investigation. But all experience proves, and rules of evidence are founded in human experience, that, if fraud is to be detected under the various cloaks it puts on, the conduct of the parties before and after the fact complained of, as well as in immediate connection with it, must be freely examined. Truth and honesty are not likely to suffer by the latitude of evidence allowed in cases of fraud, for the more thoroughly an honest transaction is investigated, the more honest it will appear.

We do not think the plaintiff has any reason to complain of the rulings of the court in respect to questions of evidence, nor of the manner of submitting the case to the jury. The learned judge expounded the law of actual and constructive fraud, and fairly submitted the question whether the sale to Deakers was for the purpose of hindering and delaying creditors. He refused to treat Deakers as a *bonâ fide* purchaser, because, although his three notes were for an amount about equal to the value of the goods, they had not been negotiated, but were still held by Connolly and wife, who might be restrained from parting with them to Deakers's prejudice. A *bonâ fide* purchaser he could not be, whatever the amount of the notes, if he was in combination with Connolly and wife to place the goods beyond the reach of execution-creditors. The jury no doubt believed there was such a combination, and that the notes were only made to give the transaction an appearance of a fair purchase. The various propositions of plaintiff's counsel were not specifically answered by the judge, because he considered them sufficiently answered in the charge. We think the law of the case was sufficiently disclosed in the charge. The plaintiff could not have been benefited by a more specific response to his points, and, therefore, a failure to make it is no ground for reversal.

The judgment is affirmed.