## Brinks *versus* Heise *et al.*

1. The time and order in which a witness is examined are within the discretion of the court.

2. Where it is alleged that an assignment was made to defraud creditors, to sustain the charge of fraud it is competent to prove any fact tending to show the relations and conduct of the parties thereto.

3. It was proper to instruct the jury that an alleged fraud must be established either by direct proof or by facts to warrant a presumption of its existence, and that if the assignment was made for the purpose of hindering and defrauding the creditors, that fact, as against contesting creditors, was fatal to its validity.

4. There was sufficient evidence of a fraudulent combination in this case to entitle it to the consideration of the jury, and its submission to them was proper.

May 10th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.

[Brinks v. Heise.]

Error to the Court of Common Pleas of *Lancaster county*: Of May Term 1877, No. 97.

Attachment execution sur judgment, issued by Heise & Kauffman against J. B. Reynolds, defendant, and A. H. Brinks, garnishee. Plea, *nulla bona.*

On the 2d of October 1872, Brinks entered into a contract to grade sections 6 and 7 of the Columbia and Port Deposit Railroad, and on the 9th of January 1873 contracted in writing with Reynolds to grade part of section 7.

On the day of its date the following agreement was entered into :—

"Article of agreement made this 29th day of October A. D. 1873, between A. H. Brinks and J. B. Reynolds, of the first part, and George E. Baldwin, of the second part, to wit: J. B. Reynolds, one of the party of the first part, agrees to pay to George E. Baldwin, of the second part, the sum of $3888, $1000 of which was given this day, and $2888 borrowed at previous dates before, out of his final estimate for work done on section 7 of the Columbia and Port Deposit Railroad, with interest from date until day of payment..

"And the said A. H. Brinks, of the first part, agrees to hold himself responsible to said George E. Baldwin, of the second part, for $1000 absolutely, and $2888 also, providing the said amount will be due on final estimate of said J. B. Reynolds, for work done on section 7 of Columbia and Port Deposit Railroad, according to his agreement with A. H. Brinks. And said George E. Baldwin agrees not to demand the money until said final estimate is paid by the Columbia and Port Deposit Railroad.

(Signed)               J. B. REYNOLDS,
                       A. H. BRINKS,
Witness :              GEORGE E. BALDWIN.
FRANK P. DAY."

And endorsed on said agreement is a writing, of which the following is a copy :—

"Columbia, October 29th 1873.
"On the expiration of the terms of the within agreement, for value received, we promise to pay George E. Baldwin, or order, the sum of $3888, with interest, without defalcation.
(Signed)               . J. B. REYNOLDS,
                       A. H. BRINKS."

By his contract with the railroad company, the latter was to retain the one-sixth of the money earned by Brinks until the completion of the contract; and by his contract with Reynolds, Brinks was to have, as his profit on Reynolds's work, one-half the amount thus retained.

[Brinks *v.* Heise.]

On the 8th of December 1873, Reynolds gave Heise & Kauffman a judgment note, on which judgment was entered for $796.10. This note was given for supplies furnished Reynolds in the prosecution of his work under his contract.

On the 6th of February 1874, Heise & Kauffman issued this attachment execution.

About the 17th of February 1874, eleven days after this attachment issued, Brinks came to Lancaster, having been told by Kauffman, one of the plaintiffs, that the creditors of Reynolds would meet him there to make arrangements how the work of Reynolds was to go on. He did not see or meet any of the creditors there, but met Reynolds. He then and there arranged with Reynolds that he, Brinks, should be his paymaster and go on with the work—Brinks to pay the hands and all expenses, and to give Reynolds money to pay his personal expenses; and then the balance that was left when the work was done was to go to, or for the benefit of, the creditors, whoever were entitled to it.

Then Brinks came back to Columbia, and saw Messrs. Heise & Kauffman, the plaintiffs, and told them the arrangement that was made, and they said they were perfectly satisfied with it. Under that arrangement Reynolds went on with the work and finished it, and Brinks retained in his hands and accounted for $2978.96, which it was agreed was the correct balance due Reynolds. Of this balance Heise & Kauffman claimed $921.21, to satisfy their judgment, which claim was resisted by Baldwin, who claimed the whole fund by virtue of the assignment contained in the above agreement. This agreement it appeared was delivered to Baldwin some ten days after its date.

The plaintiffs contended that this assignment was fraudulent and was made to defraud the creditors of Reynolds. At the trial before Patterson, A. L. J., Day, the subscribing witness to the above agreement, was called by the garnishee to prove its execution. The garnishee then read the paper to the jury. Brinks was then called to prove his signature to the endorsement on the instrument, and the plaintiff recalled Day for cross-examination, to which the garnishee objected. The court overruled the objection, which was the first assignment of error.

Day was then asked, " Did you see the $2888, recited in the agreement as part consideration, ' borrowed at previous dates,' paid to Mr. Baldwin ?"

This question, under objection, was allowed, and was the second assignment.

Plaintiff in rebuttal recalled Brinks, and asked him, " When did you first know anything about this indebtedness of $2888 to Mr. Baldwin—the previous indebtedness ?"

The allowance of this question was the third assignment.

[Brinks *v.* Heise.]

The fourth point of the garnishee and the answer thereto were as follows :—

Fraud is not to be presumed; it must be proved by the party alleging it. There is no proof of fraud, or want of consideration in the assignment or transfer by defendant to George E. Baldwin, and the testimony of defendant and of said Baldwin as to the consideration, and the said balance being insufficient to pay said Baldwin's claim, said Baldwin is entitled to said balance due by the garnishee, and the verdict must be in favor of A. H. Brinks, garnishee.

Answer. " It is true, fraud cannot be presumed; those alleging fraud must show it to the satisfaction of the jury, by proof, by facts —the jury, it is true, may infer fraud from facts clearly proved. The jury in this case, therefore, will pass upon that question, and the question of consideration in the assignment or transfer by defendant J. B. Reynolds to George E. Baldwin, is for your determination, under all the evidence in this case, and if you find there is want of consideration, in the assignment referred to, or that the same is fraudulent, then Baldwin would not be entitled to the balance in the hands of Mr. Brinks, the garnishee, and the verdict should be in favor of the plaintiffs in this attachment for the amount of said balance, or the amount of their judgment and interest; but if the jury should be of opinion, from all the evidence, that no fraud exists in the assignment or transfer of Reynolds to Baldwin, and that a good and valuable consideration subsisted between them, by reason of Reynolds having honestly borrowed money from Baldwin and owed him for same at the time, then in this issue the verdict should be for A. H. Brinks, the garnishee."

The court charged :—

" It is alleged by the plaintiffs that the assignment is fraudulent —made to defraud the creditors of Reynolds. We say to you that where fraud is alleged it must be proven, it cannot be presumed; it may, however, be presumed by the jury from the facts clearly and conclusively proven.

"And now we instruct you that if you believe from all the evidence in the case that the transfer or assignment dated October 29th 1873, of Reynolds to Baldwin, was for valuable consideration, and not fraudulent—not in fraud of these plaintiffs or other creditors— then you should find in favor of the garnishee, A. H. Brinks. But if you should find from all the evidence in the case that the assignment to George E. Baldwin was made for the purpose of hindering and defrauding the creditors of the said J. B. Reynolds, the plaintiffs in this suit, or others, then your verdict should find the amount of money in the hands of Brinks, the garnishee, and also in favor of the plaintiffs, Heise & Kauffman."

The answer to the foregoing points and the portions of the charge quoted constituted the remaining assignments of error. The verdict

[Brinks *v.* Heise.]

was for the plaintiffs for $2978.96, and after judgment thereon the garnishee took this writ, assigning the errors heretofore noted.

*H. M. North,* for plaintiff in error.—It was irregular to interrupt defendant's testimony for the purpose of the cross-examination of Day: Floyd *v.* Bovard, 6 W. & S. 75; Roland *v.* Miller, 3 Id. 390; and his cross-examination should have been confined to the subject-matter about which he was called upon to testify: Floyd *v.* Bovard, *supra.*

It was not competent for plaintiffs to prove in rebuttal that Brinks had no knowledge before said assignment of any indebtedness of Reynolds to Baldwin, as it contradicted nothing alleged or proved by the defence, and was clearly *not* evidence that there was no such debt.

It was error to submit the question of fraud to the jury upon the facts of this case: Irwin *v.* Shoemaker, 8 W. & S. 76; Stine *v.* Sherk, 1 Id. 202; Stouffer *v.* Latshaw, 2 Watts 165; Newbaker *v.* Alricks, 5 Id. 185; McClurg *v.* Willard, Id. 275; Switland *v.* Holgate, 8 Id. 385; Urket *v.* Coryell, 5 W. & S. 60; Evans *v.* Mengel, 1 Barr 68; Cunningham *v.* Smith, 20 P. F. Smith 450; Howard Express Co. *v.* Wile, 14 Id. 203; Sartwell *v.* Wilcox, 8 Harris 117; Zerbe *v.* Miller, 4 Id. 488; Allen *v.* Bank, 7 P. F. Smith 129; Sinnickson *v.* Painter, 8 Casey 384; Bear's Estate, 10 P. F. Smith 430; Caldwell *v.* Boyd, 7 Id. 322; Kaine *v.* Weigley, 10 Harris 179.

*J. F. Frueauff* and *S. P. Eby,* for defendants in error.—The case of Floyd *v.* Bovard, 6 W. & S. 75, has been repeatedly commented on by this court, and in doing so they have decided: That the order of examination or cross-examination in the court below is no cause for reversal: Schnable *v.* Doughty, 3 Barr 392; Helser *v.* McGrath, 2 P. F. Smith 531; Jackson *v.* Litch, 12 Id. 451. A party may cross-examine a subscribing witness, called to prove an instrument, as to the *res gestæ* at its execution, though it be new matter: Markley *v.* Swartzlander, 8 W. & S. 172; Bank *v.* Fordyce, 9 Barr 275; Jackson *v.* Litch, *supra.*

The question to Brinks was properly admitted, because it was not asked simply to fix a date, but to show some of the words and acts of Reynolds and Baldwin, which, combined with other evidence, go to show the alleged fraud:

1. Either in trumping up a claim, having no bona fide existence from Reynolds to Baldwin; or,

2. Using the goods obtained from Heise & Kauffman by Reynolds to produce a fund in the hands of Brinks for the payment of Baldwin, an outside creditor.

There was evidence sufficient to go to the jury on the question of fraud.

[Brinks *v.* Heise.]

A good consideration of itself would not validate the assignment if made to defraud a creditor : Ashmead *v.* Hean & Moulfair, 1 Harris 585.   Whether a fraudulent design existed was for the jury : Dean *v.* Connelly, 6 Barr 239.

Mr. Justice WOODWARD delivered the opinion of the court, October 1st 1877.

It is not apparent how any hazard of mistake or injury was incurred by the permission given to recall Frank P. Day for cross-examination.   He was the subscribing witness to the agreement between Reynolds, Brinks and Baldwin, and the question put to him was, whether or not payment of part of the consideration for the agreement was made at the time of its execution.   In regular order, the cross-examination should have been closed before the paper was read, but its admission or rejection could have been in no manner controlled by the new evidence.   Offered at any stage of the trial, the effect of the paper would not be changed.   The whole subject was within the discretion of the court.

At the very foundation of the case of the plaintiffs, in their attempt to fasten a fraud upon Reynolds and Baldwin, was the allegation that the sum of $2888 had never been advanced by Baldwin, and that the claim for it was fabricated and baseless.   Surely it was competent to show by Brinks that the fact of such an advance had not been made known to him up to the time when he bound himself conditionally to pay it in the agreement that was executed on the 29th of October 1873.   It was a fact illustrating the relations and conduct of the parties, and was relevant and competent, if there was any relevant and competent testimony throughout the cause, to sustain the charge of fraud.

Nor are the objections better founded that have been made to the portions of the charge set out in the fifth, sixth and seventh assignments of error.   The jury were instructed in substance that an alleged fraud must be established either by direct proof or by facts to warrant a presumption of its existence clearly and conclusively proved.   They were instructed also that if the assignment to Baldwin was made for the purpose of hindering and delaying the creditors of Reynolds, that fact, as against the plaintiffs, who were contesting creditors, would be fatal to its validity.   This was in accordance with recognised authority.   Lord Mansfield said, in discharging a rule for a new trial in Cadogan *v.* Kennett, 2 Cowper 432 : " If the transaction be not bona fide, the circumstance of its being done for a valuable consideration will not alone take it out of the statute.   I have known several cases where persons have given a fair and full price for goods, and where the possession was actually changed, yet being done for the purpose of defeating creditors, the transaction has been held fraudulent, and therefore void." And it was ruled in Ashmead *v.* Hean & Moulfair, 1 Harris 584,

that a conveyance of real estate, made with the intent on the part of the vendor, known to the vendee, to delay, defeat and hinder a particular creditor from obtaining his debt, though made for a valuable and full consideration, is, as against such creditor, fraudulent and void.

In reality, there is but a single significant question in this cause. Was there any evidence of the existence of a fraudulent combination legitimately entitled to the consideration of the jury ? On the 2d of October 1872, A. H. Brinks, the garnishee and defendant below, entered into a written contract to grade sections 6 and 7 of the track of the Columbia and Port Deposit Railroad Company. One-sixth of the money earned was to be retained until the completion of the contract. On the 9th of January 1873, J. B. Reynolds entered into a sub-contract with Brinks to grade part of section 7. Brinks was to receive as his profit on the sub-let section one-half of the one-sixth of the estimates retained. Although the contract was executed in January, Reynolds did not begin his work until May 1873, and until that time, and indeed until the 1st of July following, remained in the service of the Union Railroad Company in Baltimore at a salary of $100 a month. The work was carried on by him until October 1873, when his funds were exhausted, and he had fallen into debt, Heise & Kauffman, the plaintiffs below, who had furnished him with powder, fuse and other materials, being among his creditors. In that month Reynolds, Brinks and Baldwin met in Philadelphia. In the course of a conversation between them, Reynolds told Brinks that if he had $1000 he could pay off all his debts and go on with the work without any trouble. Brinks replied that he "should not stick for $1000." And Baldwin then remarked: "If you haven't got the money, I have got money in bank, and I will lend it if you will endorse or stand good for it." Reynolds and Baldwin went to Baltimore, and a few days afterwards Reynolds returned with a note for $3888 instead of $1000. This note Brinks refused to sign. Then the agreement of the 29th of October 1873 was executed, by which Brinks bound himself to pay Baldwin $1000 absolutely, and $2888 (recited as "having been borrowed at previous dates"), provided that amount should be due to Reynolds on the final estimate for his work under the contract. The plaintiffs obtained their judgment against Reynolds on the 8th of December 1873, and issued an attachment against him making Brinks garnishee on the 6th of February 1874. A new arrangement, of which the plaintiffs were informed and to which they agreed, was the consequence of this attachment. Reynolds was to continue working, and Brinks was to receive the estimates and pay the wages of the men, the necessary charges for materials and Reynolds's personal expenses. At the completion of the contract, the balance due Reynolds, if any, was, according to the testimony of Brinks, "to go to, or for the

benefit of the creditors, whoever were entitled to it." The balance found due in the end was $2978.96.

In the course of the trial it was ascertained that no notes or receipts had been given for any of the sums of money which, it was alleged, Reynolds had received from Baldwin. The dates and amounts were obtained from a small memorandum-book, on one page of which they had been entered in pencil, and it was contended that their appearance indicated that all the entries had been made at one time. Two sums of $500 each were charged before Reynolds's work under the contract was begun. Advances to the amount of $2500 were charged before he relinquished his position as superintendent of the Union Railroad Company. Nothing was said of these advances in Philadelphia, when Reynolds's need of $1000 to pay his debts and complete his contract was explained. Brinks knew nothing of Baldwin's claim until Reynolds brought the note from Baltimore. And no notice was given to the plaintiffs of the existence of that claim when they were informed of the modification of the contract between Reynolds and Brinks. They were encouraged to. suspend proceedings on their attachment by the assurance that any balance that should eventually be found due to Reynolds should "go for the benefit of his creditors." To say the least, the acts of the parties in this transaction were, in a good many respects, exceptional and peculiar. It is not in the usual course of business to make loans at intervals during a period of six months, amounting to a sum so significant as $2888, without providing some more authentic evidence of indebtedness than a pencil memorandum made by the lender, and remaining undisclosed throughout a protracted negotiation for a fresh loan, for which a third person was to be security. What ought to be the effect of the evidence in relation to Reynolds's statements in Philadelphia? Was the knowledge of Baldwin's claim fraudulently withheld from the plaintiffs? Was the whole arrangement, which was consummated by the agreement of the 29th of October 1873, a fraudulent contrivance to withdraw any balance due Reynolds on his contract from the grasp of his creditors? These were questions which only a jury could answer. They were to weigh the evidence in each detail and as a whole, and adjust its value. It has not been shown that they did not weigh it justly.

Judgment affirmed.