## U. B. LOWE v. W. W. DALRYMPLE, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 28, 1887—Decided January 3, 1888.

1. Where testimony has been given tending to establish a combination to defraud, the declarations of either party made before the design has been fully consummated, though not in the presence of the other, are proper evidence as affecting both.

2. It is not necessary that the evidence of collusion be conclusive, or that the collusion appear by positive proof; it may be shown by such facts and circumstances as will warrant a presumption of its existence.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 214 July Term 1886, Sup. Ct.; court below, No. 141 May Term 1884, C. P.

On April 7, 1884, a suit in ejectment was instituted by U. B. Lowe against W. W. Dalrymple, R. B. Dalrymple and Fred Fox, to recover a house and lot in the city of Corry. The plea was not guilty.

At the trial on January 21, 1886, before WM. A. GALBRAITH, P. J., the plaintiff, having shown possession by the defendants, deed from W. W. and R. B. Dalrymple to Philip Hoffman, dated September 10, 1879, for the lot in dispute, and deed from Philip Hoffman and wife to U. B. Lowe, dated October 17, 1879, for the same property, rested.

On the part of the defendants, testimony was then adduced from which it was claimed:

That prior to October, 1879, W. W. and R. B. Dalrymple were the owners of the property in controversy. After negotiations for the sale of it to Philip Hoffman, a deed was prepared and dated on September 10, 1879, by the Dalrymples to Hoffman, and also two judgment notes of the same date, each for $186.50, to be executed by Hoffman. When the deed had been acknowledged, the grantors having homes at different localities, but, with Hoffman, then temporarily at Bradford, Pa., it was placed in the hands of Darius Mead, together with the two notes, to be delivered to Hoffman, upon his execution of the notes. Mead delivered the deed to Hoffman and received from him the notes, duly signed, late in the afternoon of October 16, 1879. In the forenoon of October 17th, Mead gave the notes to W. W. Dalrymple, who transmitted them by mail to the prothonotary at Erie, and telegraphed attorneys at that place to see that judgments were entered on them. The notes reached the prothonotary between 4 and 5 o'clock, P. M., on October 18th, and the judgments were at once entered:

That when the deed was delivered to Hoffman at Bradford, Pa., he immediately went to Corry, and the next day, October 17, met U. B. Lowe, and with him made a trade of the property he had bought from. the Dalrymples for a property less

valuable, and $300 in money. That day Hoffman made a deed to Lowe for the Dalrymple property, and Lowe was subsequently to make a deed for the property he was to give in exchange, to Hoffman's wife or to some person whom Hoffman was to name. The boot-money was deposited by Lowe, and the deed by Hoffman, in the hands of Mr. C. G. Olmstead, an attorney at law, who was sent to Erie to see if any liens were entered against Hoffman. Mr. Olmstead arrived at Erie the evening of October 17th, and on the next day, October 18th, searched the record. Finding no liens he left Erie and reached Corry in the afternoon or evening, when he delivered Hoffman's deed to Lowe, who lived about eleven miles in the country but was waiting to receive it. The deed from Lowe for his house and lot, in exchange for that conveyed by Hoffman, was made on October 21, 1879, not to Hoffman, but to one Murray Raymond:

That as soon as the judgments had been confessed upon the notes of Hoffman to the Dalrymples, the prothonotary telegraphed to Olmstead at Corry the fact of their entry. This dispatch it was claimed was received by Mr. Olmstead, while the business of the delivery of the deed to Lowe was being closed. Subsequently the property in dispute was sold by the sheriff upon one of the Dalrymple judgments and bought in by the defendants who obtained possession by ejectment on the sheriff's deed, when this suit was brought.

Philip Hoffman was called by the defendants, and by leave of court his testimony was taken by a cross-examination. Darius Mead was afterwards called: Defendants' counsel offers to show by the witness the declarations of Philip Hoffman, made to the witness, as to what occurred at Corry on Mr. Olmstead's return from Erie, to the effect that Mr. Olmstead received there, before the consummation of the trade, a telegram from the prothonotary at Erie, informing him that two notes against Philip Hoffman had been received for record, and that this occurred in the presence of Mr. Lowe.

Objected to: Mr. Hoffman and Mr. Olmstead are present in court, Mr. Hoffman is defendants' witness and defendants cannot impeach or contradict him; no conspiracy has been shown, and the offer is to show something which occurred after the transaction was ended. On the ground that, in the opinion

of the court, sufficient evidence of a combination had been given, the objection was overruled.[1]

Q. Mr. Mead, state whether Mr. Hoffman made any declarations to you about what occurred on the evening of Mr. Olmstead's return to Erie, and, if so, what? A. Mr. Hoffman told me—that was perhaps a week after this thing happened — Objection made to the witness testifying to anything told him at the time he refers to. Objection overruled.[2]

The witness then testified that Hoffman told him that they had made the trade and they put the money and deed in Mr. Olmstead's hands and sent him to Erie to search the record; that when he came back and they were up in Mr. Olmstead's office they got a telegram stating there were two notes at Erie on record; that he undertook to tell Mr. Lowe there were two notes out and Mr. Lowe stopped him and said he did not want to hear anything about the notes.

The court in the charge reviewed the testimony and submitted to the jury to find whether the plaintiff "was a bona fide purchaser without notice, or was he cognizant of and a participant in the fraudulent purpose, evidently intended by Hoffman, to prevent the defendants from being paid the amount of purchase money due to them and represented by the two judgment notes given by him at the time he received from them the deed for this lot?"

The verdict of the jury was in favor of the defendants, and judgment being entered thereon, the plaintiff took this writ, assigning inter alia as error:

1, 2. The admission of the defendants' offers.[1] [2]

*Mr. Benson*, of *Bowman & Benson*, for the plaintiff in error:

When declarations of a conspirator, offered in evidence, are merely narrative of a past occurrence, they cannot be received as proof of the existence of such occurrence: 1 Greenl. Ev., 10th ed., §§ 110, 111: Benford v. Sanner, 40 Pa. 9. In this case, the witness stated at the very start that it was after the deed was delivered to Lowe, and after the completion of the transaction, that Hoffman related what he testified to. And there cannot be found in the evidence an item of testimony showing complicity on the part of the plaintiff; hence there was no foundation for the admission of Mead's testimony.

*Mr. W. M. Lindsey* (with him *Mr. A. E. Sisson* and *Mr. S. M. Brainerd*), for the defendants in error:

1. The facts and circumstances connected with the conveyance by Hoffman to Lowe of themselves furnished an adequate foundation for the admission of Hoffman's declarations—stronger evidence of collusion than many of the following cases: Bredin v. Bredin, 3 Pa. 81; Gibbs v. Neely, 7 W. 305; Rogers v. Hall, 4 W. 361; Deakers v. Temple, 41 Pa. 234; Confer v. McNeal, 74 Pa. 112; Mackinley v. McGregor, 3 Wh. 397; Brinks v. Heise, 84 Pa. 246; McDowell v. Rissell, 37 Pa. 164; Crawford v. Ritter, 1 Penny. 33.

2. Although the declarations of Hoffman to Mead were made, as Mead says, "perhaps a week after this thing happened," yet the scheme commenced on October 16th, and Lowe's deed was not made and delivered to Raymond till October 21st, nearly a week after the scheme commenced.

OPINION, MR. JUSTICE CLARK:

It is a rule of the law, well settled in a long line of cases, that, where testimony has been given tending to establish a combination to defraud creditors, the declarations of either party, though not made in the presence of the other, are proper evidence for the jury as affecting both: Gibbs v. Neely, 7 W. 307; Deakers v. Temple, 41 Pa. 234. It is not required that the evidence of collusion shall be conclusive; some of the cases say it is sufficient if it would justify a jury in finding the fact: Rogers v. Hall, 4 W. 359; Confer v. McNeal, 74 Pa. 112. Nor is it necessary that it shall appear by positive proof; it may be shown by such facts and circumstances as warrant a presumption of its existence: Brinks v. Heise, 84 Pa. 246.

In the case under consideration we think the proof was ample to justify the admission of Hoffman's declarations. That Hoffman himself was engaged in the perpetration of a gross and glaring fraud upon the Dalrymples is clear; indeed, that seems to be conceded. There was, however, a most manifest haste exhibited by both parties in the delivery of the deed by Hoffman to Lowe. The deed was put into Lowe's hands in Mr. Olmstead's office at the time of its execution; Olmstead says the agreement was that it should take effect immediately. Olmstead was to examine the title and search for

liens. If the examination was satisfactory, the title was to be considered as having passed at the time of the original delivery, and the deed and the money were to be given over to the parties entitled respectively. Notwithstanding this, however, Lowe retained his grasp upon the money; it was in the hands of his own attorney; he retained the title to the Corry property also pending the investigation of the record, and exhibited some anxiety, nevertheless, by meeting Olmstead at the depot to receive the conveyance back into his own hands. Hoffman, on the contrary, exercised no such precautions. The consideration of the conveyance was $1,000, yet he delivered the deed on the receipt of $300, taking no security whatever for the balance of the purchase money. The Corry property was put into the transaction at $700; the consideration expressed in the conveyance to Raymond was only $350, and the actual consideration only $200. There was no examination of the title, no search for liens, and the deed was not made until the 21st of October; and when it was made, it was made in such way as to cover up and wholly conceal the interest of Hoffman therein. Mr. Olmstead, Lowe's attorney, prepared this deed on the 21st October, according to the description received from Sanders; and, although a telegram had been placed in his hands from the prothonotary of Erie county on the 18th, giving notice of the entry of the Dalrymple judgments, yet nothing whatever seems to have been said as to this on the 21st. Mr. Lowe says that he thinks he knew nothing about the entry of the Dalrymple judgments until after the 21st.

It may be said that we have stated the facts upon one side only, with the reasonable inferences therefrom, and that these facts were explained in the testimony, taken as a whole; but, in the admissions of Hoffman's declarations the court was not to weigh the whole evidence. The question for the court was whether there was any testimony which, if believed by the jury, would justify the inference of fraud or collusion.

If the testimony of Mr. Johnston is believed, Lowe stated to him, prior to the first trial, that Hoffman didn't want him (Lowe) to make the deed for the Corry property at the time of the trade; he said that Hoffman told him not to make the deed, that he didn't want the deed then, that he wanted Lowe to make it at some future time, either to his wife or to some

other person he might name, and that he (Lowe) agreed to do so. Mr. Johnston says he asked Lowe why Hoffman didn't want a deed made, and that Lowe replied, "significantly" and "evasively," he didn't know that he knew; but Hoffman had his own reasons for that. In this conversation nothing was said as to the delay in making the deed for want of a proper description.

We think there was evidence from which the jury might well have found that Lowe was fully cognizant of Hoffman's fraudulent purpose. An inference might be drawn from a transaction possessing such features that the parties were acting in the furtherance of a common design. With the weight of the evidence we have nothing to do; that was for the jury. The question for us to consider is whether or not there was enough in the case to justify the admission of Hoffman's declarations.

It is true that the declarations made by Hoffman, which were proven, were made after the execution and delivery of the deed; but the transaction was not yet complete, the possession of the property had not yet been given, and it is perhaps uncertain whether they were not made before the delivery of the deed to Raymond. At all events, the design of the parties had not yet been fully consummated. We think the evidence was properly received, and, therefore,

Judgment is affirmed.