## Bridget Quirk, Executrix of Timothy Fogarty, Appellant, *v.* Metropolitan Life Insurance Company.

*Fraud—Evidence—Proof—Circumstantial evidence.*

Fraud may be proved by circumstantial evidence; it is not necessary
that the evidence of collusion be conclusive; fraud and collusion may be
shown by such facts and circumstances as will warrant a presumption of
their existence.

*Insurance—Fraud—Question for jury.*

Where the evidence introduced by an insurance company defendant, if
credited by the jury, must induce an almost irresistible conclusion of fact
that the policy sued upon could not have been obtained on the life of the
insured without the perpetration of fraud and that a fraud was perpetrated,
the question was for the jury and it would have been error to have withdrawn it from their consideration.

Argued Oct. 17, 1899. Appeal, No. 193, Oct. T., 1898, by
plaintiff, from judgment of C. P. No. 3, Phila. Co., March T.,
1896, No. 445, on verdict for defendant. Before RICE, P. J.,
BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER
and BEEBER, JJ. Affirmed. Opinion by Rice, P. J.

Assumpsit. Before McMICHAEL, J.

It appears from the record and evidence that the action was
brought upon a policy of life insurance; the defense was a
breach of a provision of the policy, in the nature of a condition
precedent, that "no obligation is assumed by this company previous to the date hereof, nor unless on said date the insured is
alive and in sound health."

The plaintiff sought to show that Timothy Fogarty made
application to the defendant for a policy of life insurance; that
he passed a searching physical examination to the satisfaction
of the defendant's medical examiner; that a policy was issued
accordingly while he was in sound health; and that, upon his

death from consumption, less than a year thereafter, the policy was payable to his executrix.   On the other hand, the defendant contended that even if Fogarty made the application, some one in sound health personated him in the physical examination; that Fogarty had then been for six months under treatment for consumption in the naval hospital; that he had within three months passed an examination before a medical board of the United States government, who reported in favor of a pension for disease of the throat and lungs; that he had accepted a pension for such disease a month before the insurance was taken out; and that he remained under constant treatment at the naval hospital for a continuing case of consumption of increasing severity, almost to the day of his death from consumption, that same year.   The plaintiff's contention that the condition of Fogarty's health when the policy issued was shown conclusively by the physical examination, and that the defendant was estopped by the report of its medical examiner, was met by an assertion of fraud and impersonation.   The examiner, moreover, testified to the applicant's striking himself heavily on the chest with a force no consumptive could endure, and calling attention to the sound state of his lungs.   This conduct not only led the examiner to make another and most careful examination, but likewise served to fix the matter clearly in his mind.   His testimony was explicit that the lungs of the man then before him appeared perfectly sound and disclosed none of the evidences of deterioration which the uncontradicted testimony of the hospital surgeon stated had long been plainly manifest.   Also, the man then examined stated one of his legs had been broken, whereas the pension application, to which Fogarty made affidavit, stated both of Fogarty's legs had been broken.   There appeared a discrepancy, moreover, in the signatures to the application for insurance.   One was written when the application was first made, the other at the time of the physical examination.   The descriptions of the applicant, as seen at different times, differed in several particulars.

To rebut the inference of fraud, the plaintiff and her daughter, a girl about fifteen years of age at that time, testified they knew Fogarty well and saw him undergo the examination.

At the trial the court charged the jury in part as follows:

[To rebut any inference of fraud on the part of this executrix, she having testified herself in chief that the man was Fogarty who was examined, the daughter was brought, who also testified it was Fogarty, and the testimony is brought before you. Of course, if you believe that a fraud was committed on this doctor, and that Dr. Walker examined a man who he thought was Fogarty and who was not Fogarty, but somebody else, you would make short work of the plaintiff's case, because fraud cuts down everything. But you have that testimony of Dr. Walker; that is not conclusive. It is for you with the other testimony. I do not make any suggestions or denote any opinion about it. The testimony is all for you.] [1]

In response to the request of the foreman for further instructions, the court charged the jury as follows:

[The foreman of the jury: As to the identity of Timothy Fogarty, may I ask you to charge us whether the burden of proof rests on the plaintiff to show that it was Fogarty that was examined, or on the defendant to show that it was not Fogarty?

The Court: I think the plaintiff is bound to show that the man who was examined was the man assured; that is, she is bound to show, to your satisfaction, that the man who was examined was the man that was assured. They have offered positive testimony as to that. They offer the testimony of Mrs. Quirk and her daughter. Mr. Quirk, who the doctor thinks was there, the women who were examined say was not there. They have assumed that burden. You have got to decide between the witnesses.] [2]

[The foreman: We wish to be advised whether any discrepancies we discover between the two applications, one for the pension and one for the insurance policy—whether those discrepancies would invalidate the policy, which reads very distinctly on that point; whether in point of law the reading of that policy is to be construed literally?

The Court: Yes. The policy provided in substance that the man should be in sound health at the time the policy was issued. The question of fact for you to determine is whether or not he was in sound health. In determining that question you may take into consideration the man's own statements made to the United States government in the application for pension.

The foreman: The application to the government is competent evidence, then, against him?

The Court: Yes, I think it is not only competent evidence, but evidence which I think should have great legal weight. Whether you believe his statement or not is for you; but as an admission against interest it is legal evidence. Therefore it is competent and should undoubtedly be considered by you.

The foreman: The policy being a printed contract the jury were not quite clear whether it should be upheld and taken literally or not.

The Court: Yes, you should take it as it reads. There has been a case called to my attention by counsel where this very clause in a policy of this company has been construed and upheld by the Supreme Court of Pennsylvania; they said that the sole question for the jury is whether the insured was in sound health when the policy was issued. So, you see, there has been an adjudication of our highest court upon that point.

The foreman: If the direct testimony of the defendant contradicted the direct testimony which the man gave in his application would that give greater weight to the written testimony, or to the testimony of the defendant?

The Court: You must, if you can, reconcile the testimony; if so, decide between them. Have I answered your questions responsively?

The foreman: All except the last question. That was whether the evidence given by the defendant's physician, which was to the effect that the man he examined was absolutely sound at the time of the examination, would stand as against the evidence of the plaintiff in making his application for the pension, that he was not sound?

The Court: No, I think that evidence is not conclusive. The physician who examined him may have been either mistaken and the man not have been sound when he examined him, or he may have correctly determined that he was in sound health. But the testimony is to be considered by you.

The foreman: Can we also take into account the perfunctory method in which we know all the physicians fill out these applications, or must we take it as we find it?

The Court: I think you are entitled to decide it as you decide any other question.] [3]

[Counsel for defendant has called my attention to the testimony that the company's physician examined the man and re-examined him, and that he was not in doubt about it. And they lay stress on the question of fraud. Of course, if there was a fraud committed, if the man examined was not the insured, it would be not only your duty to find a verdict for the defendant, but it would be very wrong not to do so, that is, if you come to the conclusion that there was a fraud committed.] [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) to portion of the judge's charge, reciting same. (2–4) In charging the jury in response to the request of the foreman for further instructions, reciting such instructions and responses.

*Francis G. Gallager*, for appellant.—In the answers to the jury in response to their requests for further instruction, the court has charged that the burden of proof that the man examined by the company's physician, and who was reported by said physician as Timothy Fogarty, was upon the plaintiff. The burden of proving fraud is upon him that alleges it. This principle was recognized in the case of Insurance Company *v.* Roth, 118 Pa. 329, and the court was in error in placing the burden of proving that this was Timothy Fogarty that was examined upon the plaintiff.

The court was also in error in charging the jury that they might construe a written instrument. The only question for the jury in this case was whether or not Timothy Fogarty at the time the policy was issued was in sound health, and the construction or interpretation of all written documents in this case was for the court and not for the jury.

The court was further in error in charging the jury that they might consider the question of fraud, there being no evidence in the case to support any such allegation of fraud.

*Hazard Dickson*, for appellee.—Of course, fraud must be proven and not merely asserted, and we do not at all dispute what is said in Mead *v.* Conroe, 113 Pa. 220, the case on which the plaintiff relies, that it is not enough to prove slight circumstances of suspicion only.

This is in no way opposed to the familiar rule that fraud may be inferred and need not be proven directly. Any other rule would render its proof in practice well nigh impossible: Jones v. Lewis, 148 Pa. 234.

Under the circumstances it was not too much for the court to charge that the plaintiff "was bound to show, to your satisfaction, that the man who was examined was the man that was assured." That is to say, did the testimony of these two witnesses convince the jury and override the inference to which the undisputed facts would otherwise lead? The defendant's evidence was enough to raise a doubt of the man's identity at the very least; the plaintiff, then, must answer the doubt and satisfy the jury to be entitled to recover.

The meaning of the "burden of proof," and how that burden may shift, are discussed very clearly in the last edition of the American and English Encyclopædia of Law.

The same doctrine appears in the opinion of Mr. Justice FELL in Burford v. Fergus, 165 Pa. 310.

The court is respectfully referred also to the case of Insurance Co. v. Roth, 118 Pa. 329.

OPINION BY RICE, P. J., January 17, 1900:

This was an action of assumpsit upon a policy of insurance upon the life of one Timothy Fogarty, issued by the defendant in March, 1895. The defendant pleaded non assumpsit.

On the trial the plaintiff offered in evidence the letters testamentary issued to her under the will of Timothy Fogarty, and testified that the policy in suit was issued to him, that he died on December 5, 1895, at her house, and that proofs of death were delivered to the company. In her cross-examination she asserted that he was the person examined for the insurance by the company's physician, and gave the particulars of the examination. She then rested her case.

The policy provided that "no obligation is assumed by this company previous to the date hereof, nor unless on said date the insured is alive and in sound health." As the evidence shows, one of the defenses was that the Timothy Fogarty who died in December, 1895, was not in sound health when the policy issued. In support of this defense the company proved that, at the date of the policy and up to the time of his death, he

was in receipt of a pension granted by the United States government on February 2, 1895, pursuant to his application made and sworn to on October 9, 1894, in which he stated that, in April, 1891, while on duty, a hatch fell on him, fracturing both thighs and causing internal injuries, and that, about January, 1894, while serving on board the receiving ship St. Louis at League Island, Philadelphia, " he incurred a heavy cold which settled on his lungs and throat, causing disease of throat and lungs." It was for the latter disability, namely, " disease of throat and lungs," that the pension was granted, which, as we have shown, was but a month before the policy issued.

In addition to these acts and declarations of Timothy Fogarty himself, the defendant showed by the testimony of Dr. Diehl, a surgeon in the United States navy, stationed at the United States naval hospital at Philadelphia, that the deceased was under his observation and treatment from September 18, 1894, until November 30, 1895; that during all that time he was suffering from chronic pulmonary consumption, and that when he was removed from the hospital on the date last mentioned, which was less than a week before his death, he was in the last stages of that disease, and had been confined to his bed for several days.

When the application for insurance was received it was placed in the hands of the company's physician, with directions to examine the applicant. He testified that he made an examination of a man introduced to him by Mrs. Quirk (the executrix, sole legatee and plaintiff in the present action), as Timothy Fogarty; that the examination was made at her residence; that it was a careful, painstaking, rigid examination, and that the man he examined was in sound health. He further testified that the man struck himself upon the chest, upon both the right and the left side, and said : " Nothing wrong with these lungs, Doc. ? " To which the doctor answered : " Why do you ask me ? " To which the man replied that he just wanted to know. The witness further testified : " I thought it rather peculiar and I examined him again, and found the man a first-class risk in every respect, and so reported to the company." The plaintiff, upon cross-examination, and her daughter, called by her in rebuttal, corroborated the testimony of Dr. Walker as to what took place at the examination.

We have recapitulated the evidence given on the trial because that seemed to be the better way to present the issues of fact the jury were called upon to decide, and the questions arising upon the judge's instruction concerning them.

We assume, without argument, that in an action upon a life insurance policy the burden of proving that the person who died was the person assured rests on the plaintiff, unless the defendant admits the fact or is precluded from denying it by its plea, which, of course, it is not precluded from doing where the general issue is pleaded. When the evidence is all in, and the case is submitted for determination, there can obviously no longer be any question as to the burden of proof, so far as that term is concerned with the order of production of evidence : 5 Am. & Eng. Ency. of Law (2d ed.), 21. The question then is as to the preponderance of the evidence. If at this stage there be conflicting evidence as to an essential matter of fact in issue and in the judgment of the jury the preponderance is not in favor of the party who alleged the affirmative, they ought to decide that question of fact against him, and it is the duty of the court to so instruct them, if requested. By the testimony of both parties to this issue the person who was examined for this insurance and upon whose life the company supposed it was issuing this policy was a strong, finely made man in sound health. This is an undisputed fact asserted by the plaintiff and admitted by the defendant. But if the testimony introduced by the defendant was to be believed, the deceased was not a man of that description at the time the policy issued, but, according to his own declaration and the admissions implied from his acts, was suffering from disability caused by " disease of throat and lungs," and, according to the testimony of the physician under whose observation and treatment he had been, was suffering from chronic pulmonary consumption which he had had for at least six months. This evidence went, not only to the question whether there was a breach of the condition of the policy sued on, but also to the question arising upon the plaintiff's own case, namely, the identity of the man examined for the insurance. Whether or not he was the same person who died in December, 1895, was clearly a question for the jury. They might solve it by discrediting the testimony introduced by the defendant and crediting that of the plaintiff,

or vice versa. But, inasmuch as it was an admitted fact that a person was examined for the insurance and the plaintiff asserted that the man who died was that person, the court committed no error in instructing the jury that it was incumbent on her to satisfy them of that fact by the preponderance of evidence. The second assignment is overruled.

Nor was there any error in the instructions complained of in the first and fourth assignments. Their correctness, if there was sufficient evidence of fraud to go to the jury, cannot be questioned. The complaint is that there was no such evidence. In this we cannot concur with the plaintiff's counsel. True, it is not enough to charge fraud and prove in support thereof slight circumstance only. To be of any avail it must be clearly proved: Morton v. Weaver, 99 Pa. 47; Mead v. Conroe, 113 Pa. 220; Jones v. Lewis, 148 Pa. 234. But fraud may be, and often is, proved by circumstantial evidence. As was said in the case last cited: "It is not necessary that the evidence of collusion shall be conclusive: Rogers v. Hall, 4 W. 359; Confer v. McNeal, 74 Pa. 112. Nor is it essential that the fraud or collusion appear by positive proof; it may be shown by such facts and circumstances as would warrant a presumption of its existence: Brinks v. Heise, 84 Pa. 246; Lowe v. Dalrymple, 117 Pa. 564." If the evidence introduced by the defendant in the present case was to be credited, the conclusion of fact from the facts proved was almost irresistible, that this policy could not have been obtained on the life of the Timothy Fogarty, who died in December, 1895, without the perpetration of a fraud, and that a fraud was perpetrated. At all events, the question was for the jury and it would have been error to withdraw it from their consideration. These assignments are overruled.

The third assignment of error is so framed as to leave it in doubt what particular part of the instruction quoted is complained of. It seems, however, from the brief of counsel that it is that part, in which, in response to a question put by one of their number, the jury were told that they should take the policy "as it reads." As there was no ambiguity in the particular provision referred to—nothing requiring further explanation than had been given in the general charge—this was an adequate, and a perfectly proper answer to the question. Taking question and answer together, the effect of the instruction

was, simply, that the provision was a valid one and should be upheld. This assignment is overruled.

The case was well tried, and the verdict was fully warranted by the testimony. We would not be justified in overturning it, even if we were so disposed, which we are not.

The judgment is affirmed.