## Suravitz v. Prudential Insurance Company of America, Appellant.

*Insurance—Life insurance—Motion for a new trial—Judicial discretion—Actions on insurance policies—Instructions—Fraud—Circumstantial evidence—Misrepresentations as to physical condi-*

*tion—Answers representations not warranties—Impersonation —
Evidence—Burden of proof—Shifting of burden.*

1. On appeal from a judgment on a verdict for plaintiff in an
action brought by a husband on the insurance policy of his de-
ceased wife, there was no dispute about the fact of the death of
the insured or that satisfactory proofs of death had been fur-
nished; but defendant alleged false representations in the appli-
cation for the policy by the plaintiff and his wife as to the physical
condition of the wife and the fraudulent substitution of another
woman in good health for the plaintiff's wife at the examination
made by the defendant's medical examiner. A witness testified
that he knew the plaintiff's wife and saw her undergo examination
by the insurance company's physician. In an affidavit filed by the
defendant in support of a motion for a new trial, the witness stated
that his testimony in regard to the examination of deceased was
false, and, at a hearing for the purpose of taking depositions, the
witness admitted that he stated what was averred in the affidavit,
but swore that all his evidence at the trial was true and correct;
the evidence of the witness was cumulative and the lower court
refused a new trial. *Held,* that the lower court had not abused its
discretion.

2. To instruct a jury that a fact must be established by the
weight of evidence is not equivalent to saying that it must be es-
tablished by clear and satisfactory evidence.

3. Where the answers to the questions addressed to the insured
stated in effect that the insured was in good health and that she
never had any serious illness or disease, and where it further ap-
peared that at the time the answers were made and for some time
prior thereto, the insured was suffering from heart disease, but
where there was further evidence that the insured was unable to
write, understand or read the English language, and that plain-
tiff had only a limited knowledge thereof, and that he acted as
interpreter for the insured and that the agent for the insurance
company wrote down other answers than those dictated to him by
the plaintiff, the trial judge should have unqualifiedly affirmed a
point to the effect that the burden was upon the plaintiff to estab-
lish the fraud of the insurance agent by clear and satisfactory evi-
dence, and it was not sufficient to instruct the jury that the bur-
den was upon the plaintiff to establish that fact by a fair pre-
ponderance of the testimony.

4. If the evidence to sustain an insurance company's charge of
fraudulent impersonation be sufficient in kind and character to
carry a reasonable degree of conviction, then the burden of pro-
ducing counterproof shifts; and, after plaintiff presents his testi-
mony upon the issue, it is for the jury to say which side the pre-

ponderance of evidence favors, determining the point in controversy accordingly.

5. If the proof of impersonation be insufficient in character or does not carry conviction, then there is no shifting of the burden; for a failure to sustain the burden originally assumed results, and the finding on the point involved should be against defendant; even, however, should the jury find the evidence in equilibrium, its decision should be against the defendant; for the latter has not sustained the burden of proof.

6. Where the identity of the deceased as the insured was not denied, but the substitution of another person at the medical examination held prior to issuing the policy in suit was alleged, and where the court charged the jury that they must decide as to the preponderance of the evidence and if the fair weight of it upon the question of fraudulent substitution favored defendant, they should render their verdict accordingly, the defendant was sufficiently protected, it was not entitled to instructions to the effect that the burden was upon the plaintiff to prove that the insured was the person who was examined by the physician.

7. Where the insurance policy provided that the answers to the questions should be representations, not warranties, the plaintiff was not necessarily precluded from recovery because the attention of the insurance company was not called to the incorrect answers appearing upon the copy of the application which was made a part of the policy delivered to the insured, where there was evidence that the plaintiff and his wife were illiterate and that the wife had no knowledge of the ailment from which defendant alleged she was suffering and of the alleged misconduct of the defendant's agent in erroneously transcribing the answers.

8. Where the defendant requested the court to charge the jury that it was the duty of the insured to call the attention of the insurance company to any incorrect answers written in the application by the defendant's agent and that as there was a failure so to do, the plaintiff was estopped from taking advantage of the policy in suit and the verdict must be for the defendant, the court should not have stated in refusing the point that the applicant was a foreigner who could not read, write or speak the English language and her husband could only write and read the English language imperfectly, and that they trusted and confided in the agent of the defendant to correctly write down their respective answers, as these facts were not admitted and the question of their existence should have been submitted to the jury; but the refusal of the point as drawn was not reversible error, as it requested the court to give binding instructions for defendant.

9. Where a witness for the insured, a physician who had ex-

amined the insured prior to the issuance of the policy, testified that she had a heart murmur, that it was so pronounced it could be detected by the use of the ear without the stethoscope and that he had no difficulty in detecting this murmur, it was not reversible error to refuse to permit the witness to answer a question "was her condition at that time such that a doctor, using ordinary care in making a medical examination, would have discovered this heart murmur," although the evidence sought to be elicited was relevant, as bearing upon the question whether the real Mary Suravitz (the insured) was the woman examined, as the answer of the doctor to the other questions could only mean that a doctor using ordinary care in making a medical examination would have discovered the heart murmur, and the ruling was therefore harmless.

10. Where it appeared that, at the trial under review, the physician, who had examined the plaintiff's wife prior to the issuance of the insurance policy, testified he told plaintiff his wife had heart disease; and counsel for plaintiff asked the witness whether he recalled whether his testimony was different from what it was at the last trial, and if he had not said at the last trial that "I simply told the plaintiff his wife was very sick and ought to be in the hospital"? and thereupon the witness answered "Yes," it was reversible error to refuse to permit the defendant to introduce in evidence the record of the testimony of the witness at the former trial for the purpose of showing that the testimony was not inconsistent with that given at the trial under review, as the credibility of this important witness, who was in a position to know more about the actual condition of the health of the insured than any one else, was laid open to substantial attack, and particularly where plaintiff, after introducing the oral evidence referred to, was permitted to place in evidence a part of the record of the former trial depended upon by him, showing the physician's testimony as to what he told the plaintiff concerning his wife's health.

11. Where the evidence showed that the defendant had ample grounds for suspecting the good faith of the plaintiff's case, but where defendant relied largely upon allegations of fraud supported by circumstantial evidence, the case was for the jury and the refusal of the court to direct a verdict for defendant was not error.

Argued Feb. 25, 1918. Appeal, No. 87, Jan. T., 1917, by defendant, from judgment of C. P. Lackawanna Co., Oct. T., 1910, No. 505, on verdict for plaintiff, in case of Jacob Suravitz v. Prudential Insurance Company of America. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Reversed.

394 SURAVITZ v. PRUDENTIAL INS. CO., Appellant.

Assumpsit on a policy of life insurance.    Before MAX-
WELL, P. J., specially presiding.

The facts appear in the opinion of the Supreme Court
and in Suravitz v. Prudential Insurance Company, 244
Pa. 582.

Verdict for plaintiff for $2,040 and judgment thereon.
Defendant appealed.

*Errors assigned* were in refusing a new trial, answers
to points, instructions to the jury and rulings on evi-
dence.

*A. A. Vosburg,* for appellant.—The testimony of the
witness Stephen Glinsky was material to the plaintiff's·
case and in view of his contradictory statements, he was
so unreliable that the lower court should have granted a
new trial: Smith v. Times Pub. Co., 178 Pa. 481; Mix v.
North American Co., 209 Pa. 636; Gilmer v. Kennon,
131 U. S. 22; Stephens.v. Gunzenhauser, 27 Pa. Superior
Ct. 417; Peterson v. Atlantic City R. R. Co., 177 Pa.
335; Schrimpton v. Bertolet, 155 Pa. 638; Com. v. Rud-
dy, 19 Pa. C. C. 321; Shanahan v. Agricultural Ins. Co.,
6 Pa. Superior Ct. 65; O'Bryan v. Bowers, 10 Pa. C. C.
254.

The burden was upon the plaintiff to satisfy the jury
by clear and satisfactory evidence that the answers to
the medical questions in the application were incorrectly
written by the agent and the court should have unquali-
fiedly so charged the jury as requested in defendant's
third point; and it was not sufficient to instruct the jury
that the plaintiff must establish the fact by a fair pre-
ponderance of the testimony: Penna. R. R. Co. v. Shay,
82 Pa. 198; Williamson v. Carpenter, 205 Pa. 164; Key-
stone Axle Co. v. Leyda, 188 Pa. 322; White v. Black,
14 Pa. Superior Ct. 459; Thorn, McFarlane & Co. v.
Warfflein, 100 Pa. 519; Young v. Edwards, 72 Pa. 257;
Jessop v. Ivory, 158 Pa. 71; Replogle v. Singer, 19 Pa.
Superior Ct. 442; Sutch's Estate (1), 201 Pa. 305;

Ogden v. P. & W. C. Traction Co., 202 Pa. 480; Miller v. Wise, 33 Pa. Superior Ct. 589; Miller v. Interstate Casualty Co. of N. Y., 17 Pa. Superior Ct. 360; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Keeler v. DeWitt, 24 Pa. Superior Ct. 463; Beckett v. Allison et al., 188 Pa. 279; Claybaugh v. Goodchild, 135 Pa. 421; Guernsey v. Froude, 13 Pa. Superior Ct. 405.

The trial judge erred in charging the jury that the burden of proof was upon the defendant to show that the plaintiff fraudulently substituted another woman who impersonated his wife for the medical examination of the defendant: Quirk v. Metropolitan Life Ins. Co., 12 Pa. Superior Ct. 250.

It was error to refuse to charge the jury as requested in defendant's thirteenth point to the effect that even if the agent did not correctly write down the answers to the questions relating to the health of the insured, as the insured had a copy of the application, it was the duty of the insured to call the attention of the company to any incorrect answers therein; and as they failed to do so, the plaintiff was estopped from taking advantage of the insurance policy obtained upon the basis of this application: Rinker v. Ætna Life Ins. Co. of Hartford, 214 Pa. 608; N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519; Greenfield's Est., 14 Pa. 489.

*Charles P. O'Malley,* of *Knapp, O'Malley, Hill & Harris,* with him *P. L. Walsh,* for appellee.—The refusal of the court to grant a new trial was not an abuse of discretion.

The answer of the court to defendant's third point complained of in the second assignment of error was right: Fidelity Title & Trust Co. v. Metropolitan Life Ins. Co., 64 Pa. Superior Ct. 361; Smith v. Farmers & Mechanics Mutual Fire Ins. Co., 89 Pa. 287.

The court properly charged the jury that the burden of proving the fraudulent substitution of another woman for the insured at the medical examination was upon the

defendant: Pocono Spring Water Ice Co. v. American
Ice Co., 214 Pa. 640; Quirk v. Metropolitan Life Ins. Co.,
12 Pa. Superior Ct. 250; Feinberg v. New York Life Ins.
Co., 256 Pa. 61; Clark v. Metropolitan Life Insurance
Co., 62 Pa. Superior Ct. 192; Miller v. National Casu-
alty Co., 62 Pa. Superior Ct. 417; Fisher v. Life Asso.,
188 Pa. 1.

The refusal of the court to affirm the defendant's third
point for charge as complained of in the fourth assign-
ment of error was proper, as the point asked in effect for
binding instructions in favor of the defendant: Suravitz
v. Prudential Insurance Co., 244 Pa. 582; Kister v. Leb-
anon Mutual Life Ins. Co., 128 Pa. 553; Mullen v. The
Union Central Life Ins. Co., 182 Pa. 150; Josiah Dow-
ling v. Merchants Ins. Co., 168 Pa. 234; Lueders' Execu-
tor v. Hartford Life & Annuity Ins. Co., 12 Fed. Repr.
465; Michigan Mutual Life Ins. Co. v. Leon, 138 Indiana
636; Donnelly v. Cedar Rapids Ins. Co., 70 Ia. 693;
Kansas, Etc., Ins. Co. v. Central National Bank of Ells-
worth, 57 Pac. Repr. 524; German Ins. Co. v. Horan, 15
Ky. L. Rep. 208; Baker v. Ohio Farmers' Ins. Co., 70
Mich. 199; O'Rourke v. John Hancock Mutual Life Ins.
Co., 30 N. Y. Supp. 215.


OPINION BY MR. JUSTICE MOSCHZISKER, June 3, 1918:

This is an action on a policy of insurance issued by de-
fendant company on the joint lives of Jacob Suravitz
and Mary, his wife; the latter died and the former
brought the present suit, wherein he recovered a verdict
upon which judgment was entered in his favor; defend-
ant has appealed.

There is no dispute about the fact of Mary Suravitz's
death, or that plaintiff furnished satisfactory proofs
thereof. The contest turns upon two controlling de-
fenses: (1) Alleged misrepresentations, in the applica-
tion for the policy, by plaintiff and his wife of the lat-
ter's physical condition. (2) Fraudulent substitution of
another woman, in good health, for plaintiff's wife, at the

examination made by defendant's medical examiner. In most part, the errors alleged concern rulings on evidence and instructions to the jury relevant to the issues thus raised.

Since there have been three trials of the present cause already and it now becomes our duty to order a fourth, we shall discuss the several assignments of error more elaborately than might otherwise be necessary, hoping in this way to aid in bringing the case to a final determination.

A man named Glinsky testified that he knew Mary Suravitz and actually saw her undergo examination by the insurance company's doctor. It was alleged in an affidavit filed by defendant, in support of a motion for a new trial, that, after verdict, this witness had stated his testimony in regard to the examination of deceased was false. A hearing was fixed to take depositions, and Glinsky, while he admitted having stated what was averred in the affidavit, swore all his evidence at the trial was correct and true. We agree with the court below that the man under discussion is "not a very reliable person"; and, considering the trial judge's belief that "Glinsky was an important witness for the plaintiff," that tribunal might well have refused to enter judgment on the verdict. However, in view of the fact that the testimony in question is merely cumulative, we are disinclined to hold the refusal of a new trial an abuse of discretion constituting reversible error. The first assignment is overruled.

Consideration of the second assignment calls for preliminary notice of certain relevant facts and principles of law. The application attached to the policy contains questions addressed to Mary Suravitz and answers thereto, inter alia, as follows: "Q. Are you in good health? A. Yes." "Q. Have you, so far as you know, ever had any serious illness or disease? A. No." If believed, the evidence produced by defendant, professional and otherwise, shows rather conclusively that, when these

answers were made, Mrs. Suravitz was, and for some time had been, suffering from a pronounced form of heart disease, and plaintiff admits that his wife had, a short while previous to the examination, been ill in the hospital with pneumonia; but plaintiff contends, as he did in his statement of claim and at trial, that, at the time the application was filled out, Mrs. Suravitz was unable to speak, understand, read or write the English language, that his own knowledge thereof was very limited, that he acted as interpreter, that the agent of the insurance company wrote down the answers, and, finally, that, in so doing, the latter "falsely, fraudulently, negligently, mistakenly and carelessly" inscribed answers other than those dictated to him.   For example, plaintiff denies his wife answered "Yes" to the first and "No" to the second of the above recited questions.; to the first, he avers "Mary Suravitz made answer that, in so far as she knew, she was in good health, or words to that effect," and to the second, "she replied she had not any serious illness that she knew of, [but] that in 1908 she was ill and was in Lackawanna State Hospital [with] what doctors told her was a severe cold, but she understood that she was cured and better." The defendant, in its pleadings and at trial, denied all allegations of fraud or mistake, on the part of its agent, in connection with the application or otherwise.

The contract in suit provides that the answers in the application are representations, not warranties; therefore, these issues, among others, arose: (1) Did Mrs. Suravitz have heart disease?   (2) If so, did she know it when she made the representations to the insurance company concerning her health?

When the company put in its testimony tending to show that Mrs. Suravitz had the disease in question, this evidence, together with the answers upon the application, made out a prima facie case for defendant, which, unreplied to, if believed by the jury, would have entitled it to a verdict.   As already shown, plaintiff undertook to an-

swer this defense in part by proof of certain facts tend-
ing to show that defendant's agent mistakenly, fraudu-
lently and incorrectly filled in the blank application.
When plaintiff stood upon this reply, owing to its na-
ture (as involving fraud and, in effect, an attempt to
change an integral part of the contract in suit), the bur-
den was upon him to sustain it, not only by preponder-
ating evidence, but by preponderating evidence of a cer-
tain kind, character or quality, which is not over-stated
by the phrase "clear and satisfactory evidence": See
opinion by Mr. Justice WALLING in Pusic v. Salak,
handed down simultaneously herewith.

The assignment in hand complains of an answer made
by the trial judge to one of defendant's points for charge,
which deals with the character of evidence received, as
follows: "If the jury find that Mary Suravitz, when the
application in this case was made, was suffering from a
form of heart disease incurable in its nature, and that
she knew she was suffering from this disease, but stated
that she was in good health, then the verdict must be for
the defendant; and the burden is upon the plaintiff to
satisfy the jury by clear and satisfactory evidence that
the answers were incorrectly written by the agent in the
application. Answer: This is affirmed. In other
words, we say to you, in connection with affirming this
point, that, the plaintiff alleging that the answers in
these two applications are not correctly written down,
the burden is upon the plaintiff to establish that fact by
the fair preponderance of the testimony, or weight, as we
call it. That is stated in this point and we affirm it."

Thus it will be seen that, while the above request has
to do with the quality of evidence required for the pur-
pose therein stated, the answer departs from that field
and deals with the subject of the ultimate weight of the
evidence, not its kind or character. Not only is the an-
swer guilty of this material departure, but it informs the
jury in unmistakable language that the request was in-

tended to cover the subject of the weight of the evidence, which, as just pointed out, it was not.

As stated by RICE, P. J., in Taylor v. Paul, 6 Pa. Superior Ct. 496, 501, "To instruct the jury that a fact must be established by 'the weight of the evidence,' is not equivalent to saying that it must be established by 'clear and satisfactory evidence'"; defendant requested and was entitled to the latter instruction, which it did not get. On the contrary, the answer, as phrased, practically nullified the whole purpose of the request as drawn; while in form an affirmance, in substance and effect it was almost tantamount to a denial thereof. To say the least, the answer was not responsive to the request (Waynesboro M. F. I. Co. v. Creaton, 98 Pa. 451, 453); and, in a case such as the one before us, this was harmful error; therefore, the second assignment is sustained.

As to the allegations that "plaintiff substituted another woman, not his wife, and introduced her to the [insurance company's] doctor as his wife, and caused her, instead of his wife, to be examined by the doctor," the trial judge instructed that the burden was upon defendant to prove these charges; the latter, in the third assignment, contends this was error, and that, in the first instance, the burden was on plaintiff to prove Mary Suravitz was in fact the person examined.

Of course, where the fact is contested, the burden is always on the plaintiff to show that the person whose death is proved was the person insured. Here, however, it is not contended either that Mary Suravitz was not the person who died or was not the person insured, but that, when the medical examination was made, plaintiff deliberately substituted another woman in her place. This is an affirmative defense of fraud upon the insurance company, involving the allegation of the existence of specific facts, which defendant assumed the burden of proving by a preponderance of clear and satisfactory evidence.

The burden of establishing facts by such character of

proofs as the law demands, and the weight of the evidence, always rests upon the party asserting them; although, as to the necessity for producing evidence, the burden of proof may shift from time to time in the course of trial. When the proofs are all in, and the case is ripe for determination, it becomes a matter of weighing the evidence; and this is for the jury, under proper instructions. If there is a conflict on a material matter of fact, and it be decided that the preponderance of the evidence does not lie with the party who alleged the affirmative, then the burden of proof has not been sustained by such party, and, in the performance of its duty, the jury must find against him.

In other words, applying the rules just stated to a case like the present, if the evidence to sustain defendant's charge of inpersonation be sufficient in kind and character to carry a reasonable degree of conviction, then the burden of adducing counter-proof shifts, and, after plaintiff presents his testimony upon the issue, it is for the jury to say which side the preponderance of evidence favors, determining the point in controversy accordingly. On the other hand, if the proof of impersonation is insufficient in character, or does not carry conviction, then there is no shifting of the burden, in any sense of that term; for a failure to sustain the burden originally assumed results, and the finding on the point involved should be against defendant. Finally, should the jury find the evidence in equilibrium, its decision ought to be against defendant; for, again, the latter has not sustained the burden of proof (Burford v. Fergus, 165 Pa. 310, 314; 10 R. C. L. 896 et seq.; also see quotation from RICE, P. J., in Quirk v. Ins. Co., infra).

While the trial judge was not requested to, and did not, go into such an elaborate explanation of the rules relevant to burden of proof as we have endeavored to do, he, in effect, charged in accordance with the principles just announced; for, in connection with the instructions complained of in the present assignment, he twice told the

jury that, in the end, they must decide as to the preponderance of the evidence, and, if the fair weight thereof, upon the subject under consideration, favored defendant, they should render their verdict accordingly. Since defendant stood upon an allegation of fraud, as already pointed out in our consideration of the second assignment, the court might properly have gone further and instructed that the burden was upon it to sustain this charge, not only by a preponderance of evidence, but by evidence "clear and satisfactory" in character.

In Quirk v. Ins. Co., 12 Pa. Superior Ct. 250, chiefly relied upon by appellant, the plaintiff expressly assumed the burden of showing that the insured was in good health at the time the policy was issued; and, in order so to do, she undertook, as part of her case, to prove deceased had successfully passed "a searching physical examination to the satisfaction of defendant's medical examiner." In reply, defendant asserted the insured had passed no such examination, but some one else was substituted in his place for that purpose. As the case was tried, the Superior Court held the court below had not erred in telling the jury plaintiff was "bound to show that the man who was examined was the man insured"; but, in connection with this ruling, RICE, P. J., correctly states the general rules on the burden of proof as we have given them above: "When the evidence is all in, and the case is submitted for determination, there can obviously no longer be any question as to the burden of proof, so far as that term is concerned with the order or production of evidence: 5 Am. & Eng. Ency. of Law (2 ed.) 21. The question then is as to the preponderance of the evidence. If at this stage there be conflicting evidence as to an essential matter of fact in issue, and, in the judgment of the jury, the preponderance is not in favor of the party who alleged the affirmative, they ought to decide that question of fact against him, and it is the duty of the court to so instruct them, if requested."

Although Quirk v. Ins. Co. and the case at bar have

points of similarity, and much of the law there announced is applicable here, yet we do not feel that all the rules laid down as governing the trial of the former were controlling in the trial under review, where the matter of the alleged substitution was not put at issue, by pleadings, affidavit of defense, or otherwise, till defendant first introduced the subject during the presentation of its case. As this cause was developed in the court below, we see no error in the instructions on the burden of proof complained of in the third assignment, which is overruled.

The fourth assignment complains of the trial judge's answer to another of defendant's requests for charge, wherein the latter asked that the jury be instructed it was the duty of the person insured to call the attention of the insurance company to any incorrect answers written in the application by the latter's agent; that, since in this case there was a failure so to do, plaintiff was thereby estopped from taking advantage of the policy in suit, and "the verdict must be for the defendant." In refusing this point, the trial judge stated the applicant "was a foreigner who could not read, write or speak the English language, and her husband could only write and read the English language imperfectly," adding, "they trusted and confided in the agent of defendant company to correctly write down their respective answers."

If the facts, as to the extent of the illiteracy of plaintiff and his wife, and their trust in defendant's agent, were all admitted in the case, then, under our decision in Suravitz v. Prudential Ins. Co., 244 Pa. 582, the strict rules laid down in Rinker v. Ætna Co., 214 Pa. 608 (cited by appellant), would not be applicable, and a refusal of the point would be justifiable on that ground alone; but, since such facts were not admitted, the court, instead of treating them as established, should have recognized at all times the province of the jury to pass upon and determine the extent of the knowledge of the English language possessed by Suravitz and his wife

(particularly the former, in view of his apparent linguistic proficiency at the trial), and also the degree in which they trusted to and confided in the agent of the company. In the respects indicated, the answer under consideration was erroneous; but, since the point requested binding instructions for defendant, it could not properly have been affirmed.

In the Rinker case, supra, the answers in the application were all warranted to be true, and it was therein agreed that, if they were not so, the insurance should be void; whereas under the express terms of the present application the answers are not warranties, but representations. The material differences in the governing rules of law between the two cases is pointed out by us in Suravitz v. Prudential Co., supra (see also Oplinger v. New York Life Ins. Co., 253 Pa. 328; Feinberg v. New York Life Ins. Co., 256 Pa. 61; and Baer v. State Life Ins. Co., 256 Pa. 177), and, thereunder, if the jury believed the testimony presented by plaintiff as to the illiteracy of himself and wife, their alleged lack of knowledge of the ailment from which the latter (as alleged by defendant) was suffering, and the alleged misconduct of the agent of the defendant company in wrongly transcribing their answers, then the failure to call the insurance company's attention to any incorrect answers in the application would not entitle the latter to binding instructions in its favor, as requested in the point now under consideration; hence, no reversible error is shown by the present assignment, and it is overruled.

The fifth assignment alleges that the trial judge erred in excluding a question put by defendant's counsel to Dr. J. A. McGinty, who had attended and physically examined Mrs. Suravitz, in June, July, August, September, November and December, 1908, prior to the issuance of the policy in suit. This doctor testified that, at the time of his examinations, he found deceased suffering from serious heart trouble. The witness was then asked, "was her condition at that time such that a doctor, using

ordinary care in making a medical examination, would have discovered this heart murmur that you speak of?" Plaintiff's objection to the question was sustained, and an exception granted defendant. Appellant contends that the evidence sought to be elicited was relevant, as "bearing upon the question whether or not the real Mary Suravitz was the woman examined," and for that reason it should have been admitted. We can see the relevancy of the offer, from the standpoint indicated; but it is apparent no harm was done appellant by the ruling here in question, for Dr. McGinty plainly testified that the murmur was so pronounced "it could be detected by the use of the ear without the stethoscope," and that he had no difficulty "in detecting this murmur"—which could be understood by the jury to mean only that "a doctor, using ordinary care in making a medical examination, would have discovered this heart murmur." The assignment, showing no reversible error, is overruled.

The sixth assignment complains because the trial judge failed to read and affirm the following request for charge: "Statements of lay witnesses that they knew the insured and that she was apparently in good health, are insufficient to discredit the positive statements of physicians who had treated her for heart disease." The failure to read and affirm this point might have been error, had it been preceded by some explanatory words, for example, "When the jury consider the question whether or not, at the time of her examination for the insurance, Mrs. Suravitz was suffering from heart disease, I instruct you that," or "When the jury come to consider the actual condition of health of Mrs. Suravitz, etc."; but, since the request lacked such essential explanatory words, the court below cannot be held to have erred in failing to affirm it, as drawn. Under the circumstances, we see no merit in the present assignment; it is overruled.

The seventh assignment complains that the trial judge erred "in excluding the record relating to the testimony

of Dr. J. A. McGinty given at a former trial of this case."
At the trial now under review, this doctor testified that,
in 1908, prior to the issuance of the insurance, he told
plaintiff the latter's wife had heart disease. After this
testimony was in, counsel for plaintiff asked the witness,
"You recall, now, don't you, that your testimony today
is different from what it was at the last trial?" The
question was not answered. Counsel then asked if, at
the prior trial, the witness had not said, "I simply told
him [plaintiff] his wife was very sick and she ought to go
to the hospital." The answer was "Yes"; whereupon
counsel for defendant (referring to what occurred at the
prior trial, and, apparently, reading from the record
thereof) said, "I desire to call the attention of the wit-
ness to the next question following the one to which his
attention was called,......the question being as fol-
lows: 'What else did you tell him?......Do you remem-
ber telling him [the husband] in that conversation what
the nature of the trouble was?' [referring to the wife's
ailment]." Counsel for plaintiff immediately objected
to these offers of what had occurred at the other trial.
After some colloquy, the witness was asked by counsel for
defendant, "Was that question asked [at the last trial],
and you did not answer it because of objection and the
ruling of the court?" This was objected to, and the trial
judge said, "The record shows that"; whereupon the ex-
amination closed. Later, counsel for defendant offered in
evidence the record of the former trial, directing atten-
tion to particular pages covering the part of the exami-
nation of Dr. McGinty which he had attempted to get in
evidence when that witness was upon the stand in the
present trial, and expressly stating that the offer was
made to show the jury the testimony of the witness at
the two trials was not inconsistent, and that the latter
had not been permitted at the former trial to testify to
the fact that he had told plaintiff "the nature of the trou-
ble [i. e., heart disease]," from which his wife was suffer-

ing.  Upon objection of plaintiff, the record was excluded.

The ruling just referred to was clear error, giving one side an unfair advantage over the other; and we have no doubt, as asserted by defendant, that the apparent differences in the testimony of Dr. McGinty at the two trials was made much of by plaintiff's counsel in his argument to the jury.  Albeit the presiding judge stated that the record showed what defendant's counsel was attempting to get in, yet when the stenographer's certified notes of testimony were actually offered, he excluded them; hence appellant did not get in evidence the relevant fact, or incident, which it endeavored to prove, i. e., that, at the prior trial, it had unsuccessfully offered to place upon the record the same testimony given at the present trial.

Dr. McGinty is the physician who attended Mrs. Suravitz, and, probably, he was in a position to know more about her actual condition of health than any one else; moreover, he is the sole person who is alleged to have actually informed plaintiff his wife had heart disease; and the latter flatly contradicted him on this point.  By the ruling complained of, the credibility of this most material witness, whose testimony bore either directly or indirectly upon all the controlling issues in the case, was in effect laid open to substantial attack.  In aggravation of this error, it appears that plaintiff, after introducing the oral proofs already referred to, was permitted to place in evidence the part of the record of the former trial depended upon by him, showing Dr. McGinty's testimony as to what he told Mr. Suravitz concerning his wife's health, notwithstanding this was objected to by defendant on the ground that the offer did not include the question which was asked at that time by the latter's counsel and excluded, as to what else the doctor had told plaintiff about Mrs. Suravitz's health; under the circumstances, the one part of the record should not have been

admitted without the other. This assignment is sustained.

The eighth and ninth assignments complain of the refusal of binding instructions and of judgment n. o. v. in favor of defendant. When the suit was here on a former appeal, we stated, "This is clearly a case for the jury"; after reading the four hundred pages of testimony, etc., submitted at the trial now under review, and considering the able argument of counsel on both sides, we see no reason to change the opinion then expressed. The evidence shows defendant has ample grounds for gravely suspecting the good faith of plaintiff's case; but, technically, it is one for a jury to pass upon. At the same time, it must be kept in mind the defense rests on allegations of fraud, and the insurance company depends largely upon circumstantial evidence, or the proof of facts from which inferences must be drawn, to relieve it from liability. Fraud may be established in this manner, when the evidence of the facts relied on for the purpose is "clear and satisfactory," if the latter "naturally, logically and clearly indicate its existence" (10 R. C. L. 1004); but, when one is carrying the burden of such a defense, he should have full opportunity to present it, and is entitled to the protection of every legal right, be it technical or otherwise, so that, in the end, the issues involved may go to the jury on relevant and competent evidence, under proper instructions. In order to secure such rights to the present defendant, we have been obliged to sustain the second and seventh assignments of error; but, for the reason indicated earlier in this paragraph, the two assignments under immediate consideration are overruled.

The judgment is reversed with a venire facias de novo.