### In re EDELMAN.

(District Court, D. Maryland. June 18, 1918.)

1. BANKRUPTCY ☞136(2)—CONCEALMENT OF ASSETS—TURN-OVER ORDER.
   Evidence *held* to show that the bankrupt had concealed assets, and to warrant an order directing him to turn over the same to his trustee.

2. BANKRUPTCY ☞136(2)—CONCEALMENT OF ASSETS—TURN-OVER ORDER.
   Where goods are traced into the bankrupt's possession shortly before bankruptcy, he must show what has become of them, where they are not turned over to the trustee.

In Bankruptcy. In the matter of the bankruptcy of Leslie Edelman, bankrupt. On application by the trustee to require the bankrupt to turn over assets alleged to have been concealed. Findings of referee confirmed, and bankrupt required to turn over to the trustee certain assets.

Julius Wyman and Jacob S. New, both of Baltimore, Md., and Herbert A. Wolff, of New York City, for trustee.

Bernhard Cline, of Baltimore, Md., for bankrupt.

ROSE, District Judge. The trustee in bankruptcy asks that the bankrupt be required to turn over assets which he is alleged to have concealed. The bankrupt says he surrendered them all. The referee was directed to take testimony and report. He finds that the bankrupt has failed to turn over merchandise to the value of $9,147.74. The trustee asks that this finding be confirmed, and the bankrupt directed to deliver such merchandise to him.

[1] The failure is a bad one. The liabilities exceed $16,000. From the assets not more than $1,200 will be realized, if that much. The bankrupt does not claim to have had any serious business losses. He says that his financial wreck was due to his bad habits of drinking, gambling, and consorting with loose women. Much testimony as to his conduct in this respect was taken. He tried to show that he was to the last degree reckless, and that the cost of his dissipations had been great. The trustee essayed to prove that, while he was not a model in the respects mentioned, yet he had not wasted in this way any such sums as he claimed. Into this issue it is not necessary to go. It may be conceded that it is not unlikely that in the last few months of his business career he spent on forbidden pleasures all the ready money which came into his hands, even if it is also highly probable that he has grossly exaggerated their cost.. His mode of life may have been sufficient to ruin his business. It explains why, in the last three months immediately preceding his failure, he paid only $65 to his merchandise creditors, and why he owes a year's store rent and 6 weeks' salary to his 17 year old clerk; but it does not throw any light upon the disappearance of that large part of his stock of merchandise which he did not sell or otherwise turn into money. There is nothing in the record to suggest that he made any attempt to force the sale of his wares. He sold them precisely as he had always done, and to about the same extent.

The referee finds that on the 1st of November he had on hand a stock of goods which was worth not less than $5,000, and possibly twice as much. During November, December, and January, upwards of $8,100 of additional goods came in. His sales did not at retail greatly exceed an aggregate of $5,000, and the goods so sold had not cost him over $3,300. In consequence, he should have turned over to his receiver goods of the approximate value of $9,800. All that in fact came into the receiver's hands were appraised at $526. The total appraisement of everything in his store footed up $1,196; but $670 of that aggregate was the value placed upon his fixtures. At public sale his brother bought both stock and fixtures for $905. The referee concludes that the bankrupt has failed to account for upwards of $9,100 of goods which were in his possession immediately before his bankruptcy. The evidence not only justifies, but requires, this finding. The bankrupt says that the goods appraised at a trifle over $500 actually cost him $2,000. The three appraisers were experienced men, whose capacity and honesty were not criticized. His charge of gross undervaluation rests upon his uncorroborated testimony, and unfortunately the record shows him to be utterly unworthy of belief. The costly portions of his stock were of small bulk. They could be removed

without attracting attention. His clerk testifies that in the 30 days, or thereabouts, preceding the bankruptcy, valuable articles disappeared from time to time. This witness is not hostile to the bankrupt. He is still employed in the same place by the brother of the bankrupt, who now there carries on the same business.

[2] The rule is well settled that, where goods are traced into the bankrupt's possession shortly before the bankruptcy, he must show what has become of them. That he has not done. The findings of the referee will be confirmed, and the bankrupt required within 10 days to turn over to the trustee the goods in question.