### SHEINMAN v. CHALMERS.

Circuit Court of Appeals, Third Circuit.
June 25, 1929.

No. 4014.

Samuel J. Gottesfeld and Harry Shapiro, both of Philadelphia, Pa., for appellant.

J. Howard Reber, James McMullan, and Reber,. Granger & Montgomery, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The trustee filed a petition with the referee averring that the bankrupt had concealed and withheld assets of the estate and praying that he be ordered to turn over to him cash in the amount of $54,328.21 and merchandise of the value of $64,251.29. The referee made an order directing the bankrupt to turn over $32,751.17 in cash and also merchandise worth $34,447.64. After the order had been reviewed and approved by the District Court the bankrupt came here on appeal with a record of but seven of the more than 600 pages of testimony that had been taken before the referee (on which, after the trustee had suggested a diminution of the record, he elected to stand) assigning error particularly with reference to the disallowance of two claimed credits, one of $3,825 and the other of $5,000, and error generally in a wrong principle of computation and faulty consideration of the testimony as disclosed by expressions in the referee's report and the judge's opinion which he says (and on which alone he relies) show their own error and contain their own refutation.

As it is impossible to look through and beyond the referee's report and the judge's opinion with reference to the two credits disallowed and discover precisely the evidence on which they based their discussions and grounded their decisions, we can only say that, reading the short record and accepting, as we must, the referee's story of the case as accurately reflecting the evidence, there is enough to sustain his finding and the court's decree on these two items within the rules of Oriel et al. v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. ——, which define the character of evidence and caution the conscience of the judge in proceedings of this kind.

In regard to the merchandise account, it should be observed that the bankrupt did not turn over to the trustee any inventory, nor could one be found among his very imperfectly kept books and papers. Suspecting that the bankrupt had made away with assets, the trustee employed an accountant to construct an inventory, if that were possible; but to make one as of the date of bankruptcy the accountant, very naturally, required a starting point sometime back, which the trustee supplied him in the form of a financial statement which the bankrupt had, on December 1, 1921, furnished one of his creditors as a basis of credit. This showed merchandise then on hand amounting to $67,038.09 as against merchandise on hand June 2, 1922, the date of bankruptcy, of $15,495.94. The accountant produced an inventory of merchandise which the bankrupt should have had on the date of bankruptcy by taking the bankrupt's own inventory figures in his financial statement of December 1, 1921 and adding purchases and subtracting sales down to the date of bankruptcy, all figured at cost. This showed merchandise which he should have had at bankruptcy of the value of $79,747.23, from which the accountant deducted $15,495.94, the value of merchandise actually on hand, thus disclosing a shortage of $64,251.29. Adopting the figures of the trustee's accountant, the referee then gave the bankrupt the benefit of all credits that his books showed and substantially all he claimed except in one particular. In order to supply the referee with all available data in arriving at a correct figure the trustee, besides introducing in evidence the bankrupt's financial statement of December 1, 1921, introduced his income tax return of December 31, 1921. The bankrupt then employed an accountant of his own who constructed an inventory as of the date of bankruptcy by using as a starting point the merchandise shown in his income tax return. He then worked back through the bankrupt's books, adding purchases and subtracting sales, to a hypothetical but, as it is claimed, correct inventory on December 1, 1921, and thereafter, pursuing the same method of additions and subtractions, worked forward to the date of bankruptcy. He thus produced an inventory on that date smaller than the inventory made by the trustee's accountant, yet disclosing on his own calculation $33,930.11 of merchandise unaccounted for. The referee's ultimate finding, after allowing credits, was $34,447.64.

The bankrupt's grievance is that the referee should have used not the inventory figure of the financial statement but the inventory

904

figure of his income tax return as a starting point of the calculation and from the lesser result thus obtained he should have allowed the deductions he did allow and the two others previously disposed of, and, more particularly, that the referee and later the court should not have acted upon this evidence at all because it was meager and therefore insufficient in view of the gravity of the charge and possible consequences; or, at any event, they did not weigh the evidence as required by the rule of the Oriel Case, supra.

There is, for obvious reasons, little to be said on this point. Nor is there occasion to determine whether the referee was wrong in not following the bankrupt's accountant or was right in following the trustee's accountant because in both the financial statement and income tax return the bankrupt was equally bound by his admissions of merchandise then on hand, which later turned out to be admissions against interest. · So far as we can discover from the evidence reflected in the referee's report he was free to take that one of the two admissions which seemed more trustworthy and produced the larger inventory as a result. In any event the bankrupt made a financial statement and bound himself by what he said, and the referee had a right to take him at his word.

Turning to the referee's report (which the bankrupt is here using as evidence) it appears that the referee in finding the initial difference between merchandise on hand and that which should have been on hand said: "We therefore have relevant proofs, which are uncontradicted, that are sufficient to warrant a finding that the bankrupt failed to account for the sum of $51,727.25; the burden therefore shifts to the bankrupt to explain the apparent discrepancy." Thereupon the bankrupt, on this appeal, entered the familiar mist which arises from and surrounds the expression "the burden of proof never shifts." We shall not try to dispel it beyond saying that it is true the burden of proof never shifts from the party having the affirmative of an issue. There it rests, at least until he has made out a prima facie case. Then the burden, not of proving the proponent's case but of explaining or rebutting it, shifts to the other party. This burden he may assume or ignore as he may wish, but he will suffer the consequences of not taking it up and carrying it. Moffat v. United States, 112 U. S. 24, 5 S. Ct. 10, 28 L. Ed. 623; In re Locust Bldg. Co. (C. C. A.) 299 F. 756; In re Chavkin (C. C. A.) 249 F. 342; In re Edelman (D. C.) 251 F. 429; In re Triangle Cloak & Suit Co. (D.

C.) 257 F. 137; In re Magen Co. (C. C. A.) 10 F.(2d) 91; Suravitz v. Insurance Co., 261 Pa. 390, 400, 104 A. 754.

What the referee plainly meant by the words "the burden shifts" was that the trustee had proved his case against the bankrupt and that it would stand unless the bankrupt should assume the burden of explaining or contradicting it. Failing in that, the trustee's proofs would stand uncontradicted. It is clear that, keeping in view the principles of Oriel v. Russell, supra, the trustee made a case on sufficient evidence, validly admitted and properly considered, which the bankrupt has not shaken by evidence or argument.

The decree is affirmed.